## Case No. 2,575.

CHAMBERLAIN et al. v. CHANDLER.

[3 Mason, 242.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1823.

### ADMIRALTY JURISDICTION OF TORTS.

1. The admiralty has jurisdiction of personal torts and wrongs committed on a passenger, on the high seas, by the master of the ship.

[Cited in Thomas v. Gray, Case No. 13,898; Waring v. Clarke, 5 How. (46 U. S.) 488; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 434; The Aberfoyle, Case No. 16; Crapo v. Allen, Id. 3,360; Smith v. Wilson, Id. 13,128; Pendleton v. Kinsley, Id. 10,922; The City of Brussels, Id. 2,745; White v. McDonough, Id. 17,552; Simpson v. The Ceres, Id. 12,881. Distinguished in McGuire v. The Golden Gate, Id. 8,815.]

2. It is immaterial whether such torts be by direct force, as trespasses, or consequential injuries.

[Cited in Waring v. Clarke, 5 How. (46 U. S.) 468; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 432; The Highland Light, Case No. 6,477. Distinguished in The David Reeves, Id. 6,625.]

This was a libel in the admiralty, brought by the libellants, (being husband, wife, and children,) who were passengers on board of the ship Pearl, on a voyage from the island of Woakoo to Boston, against the defendant, who was master of the ship, for the voyage, for damage, for asserted ill-treatment and injuries to them during the voyage. The defendant put in, by way of answer, an allegation denying the ill-treatment and injuries. The cause came to be heard upon the evidence.

Hubbard and Webster, for libellants.

T. Fuller, for defendant.

STORY, Circuit Justice. No exception has been interposed against the jurisdiction of the court in this case. I wish however that it should be understood, that the point has not passed sub silentio; but that it has attracted the consideration of the court. The contract itself is a maritime contract, for the conveyance of passengers on the high seas, and the wrongs complained of, are gross ill-treatment and misconduct in the course of the voyage, while on the high seas, by the master, in breach of the stipulations necessarily implied in his contract, of the duties of his office, and of the rights of the libellants, under the maritime law. The jurisdiction of courts of admiralty over torts, committed in personam on the high seas, has never, to my knowledge, been doubted or denied by the courts of common law, and has been often recognised by adjudications in the admiralty. 2 Brown, Civ. & Adm. Law, 108; 3 Bl. Comm. 106. In 4 Inst. 134, the common law judges admitted, in the fullest manner, that "of contracts, pleas, and quereles made upon the

---

[1] [Reported by William P. Mason, Esq.]

seas, &c. the admiral hath and ought to have jurisdiction; and no precedent can be shown that any prohibition hath been granted for any contract, plea, or querele concerning any marine cause, made or done upon the sea." As to the competency of the admiralty to award damages for personal wrongs in cases of captures, as prize, Le Caux v. Eden, 2 Doug. 594, is directly in point; and farther, that in such cases (i. e. of prize), it is exclusive. 2 Jenk. p. 774. See, also, Caton v. Burton, Cowp. 330; 2 Brown, Civ. & Adm. Law, 108, 110; 3 Bl. Comm. 106; Zouch. Adm. 104. No distinction has been recognized between torts to property and torts to persons, on the high seas; and in Le Caux v. Eden, the court seemed to think that none existed. In the case of Lindo v. Rodney, 2 Doug. 613, note, the court held, that the operation of the statutes of Richard was only "to confine the admiralty by the locality of the thing done, which is the cause of action; it must be done on the high seas." Indeed, a tort on the high seas is strictly, within the words of those statutes, a plea or querele. arising on the high seas. And it cannot make any difference in point of principle, whether it be a direct or consequential wrong, whether it be an assault and imprisonment, or a denial of all comforts and necessaries, and a course of brutal insult and mal-treatment, whereby the health of the party is materially injured, or he is subjected to gross ignominy and mental suffering.

The admiralty has been accustomed to deal with subjects of this nature from early times. In the case of The Ruckers, 4 C. Rob. Adm. 73, a civil suit for damages was brought in the admiralty, for an assault by the master of the ship on a passenger on the high seas, and on full consideration the jurisdiction was sustained. On that occasion the court directed the records to be searched, and the registrar reported, "that many instances were to be found of proceedings on damage on behalf of persons described as part of the ship's company, against officers or others belonging to the same ship; and several against persons belonging to other ships; and that there were other instances of proceedings on the part of A. B. against C. D. without any specification of the capacity, in which the persons stood." Sir William Scott said: "Looking to the locality of the injury, that it was done on the high seas, it seems to be fit matter for redress in this court." Doctor Godolphin (a very learned admiralty judge) in enumerating the various subjects of admiralty jurisdiction includes "all affairs relating to mariners, whether ship officers, or common mariners, their rights and privileges respectively; their office and duty; their wages; their offences whether by wilfulness, casualty, ignorance, negligence, or insufficiency, with their punishments." See, also, Exton, Adm. Jur. 70. My judgment accordingly is, that the libel is well founded in point of jurisdiction; and that if the injuries complained of are established in evidence, the plaintiffs are entitled to redress, constituting in the technical phrase of the admiralty "a cause of damage."

In respect to a case like that before the court, a suit by passengers (a husband, wife, and family) against the master of the ship, for continued, wanton cruelty, and ill treatment, it is certainly entitled to be listened to with attention. The authority of a master at sea is necessarily summary, and often absolute. For the time he exercises the rights of sovereign control; and obedience to his will and even to his caprices, becomes almost indispensable. If he chooses to perform his duties, or to exert his office in a harsh, intemperate, or oppressive manner, he can seldom be resisted by physical or moral force; and therefore in a limited sense, he may be said to hold the lives and personal welfare of all on board in a great measure under his arbitrary discretion. He is nevertheless responsible to the law; and if he is guilty of gross abuse and oppression, I hope it will never be found, that courts of justice are slow in visiting him, in the shape of damages, with an appropriate punishment. In respect to passengers, the case of the master is one of peculiar responsibility and delicacy. Their contract with him is not for mere ship room, and personal existence, on board; but for reasonable food, comforts, necessaries, and kindness. It is a stipulation, not for toleration merely, but for respectful treatment, for that decency of demeanor, which constitutes the charm of social life, for that attention, which mitigates evils without reluctance, and that promptitude, which administers aid to distress. In respect to females, it proceeds yet farther, it includes an implied stipulation against general obscenity, that immodesty of approach, which borders on lasciviousness, and against that wanton disregard of the feelings, which aggravates every evil, and endeavors by the excitement of terror, and cool malignancy of conduct, to inflict torture upon susceptible minds: What can be more disreputable, and at the same time more distressing. than habitual obscenity, harsh threats, and immodest conduct, to delicate and inoffensive females? What can be more oppressive than to confine them to their cabins by threats of personal insult or injury? What more aggravating than a malicious tyranny, which denies them every reasonable request, and seeks revenge by withholding suitable food and the common means of relief. in cases of sea-sickness and ill health? It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks on them as unworthy of its cognizance. The master is at liberty to inflict the most severe mental sufferings. in the most tyrannical manner, and yet if he withholds a blow, the victim may be crushed by his unkindness. He commits nothing within the reach of civil

jurisprudence. My opinion is, that the law involves no such absurdity. It is rational and just. It gives compensation for mental sufferings occasioned by acts of wanton injustice, equally whether they operate by way of direct, or of consequential, injuries. In each case the contract of the passengers for the voyage is in substance violated; and the wrong is to be redressed as a cause of damage. I do not say that every slight aberration from propriety or duty, or that every act of unkindness or passionate folly, is to be visited with punishment; but if the whole course of conduct be oppressive and malicious, if habitual immodesty is accompanied by habitual cruelty, it would be a reproach to the law, if it could not award some recompense.

Let us now proceed to the consideration of the evidence in this case so far as it applies to the libel, which is not confined to mere acts of wanton cruelty and misconduct, but embraces in its gravamen what the law in its strictest sense deems assaults and batteries.

(The judge here went into a full examination of the evidence; and came to the conclusion, that the libel was sufficiently proved to entitle the libellants to damages, and he accordingly decreed, that the defendant should pay $400 damages—being the amount of his share of the passage money received for the passage of the libellants—and costs of suit.)

Decree accordingly.