## HORATIO N. SIMMONS *vs.* NEW BEDFORD, VINEYARD & NANTUCKET STEAMBOAT COMPANY.

On the trial of an action by a passenger for an injury sustained by the fall of a small boat which was hung over the main deck on the larboard side of the defendants' steamboat and fell at a time when persons were in it whom the plaintiff contended that the defendants negligently permitted to be there, *Held*, that the admission of evidence that on the same voyage persons were in another small boat which was hung on the starboard side of the steamboat was a good ground of exception, if the evidence was admitted in such a manner as to tend to show that the officers of the steamboat knew or permitted the similar use of the boat which fell.

On the trial of an action by a passenger against the proprietors of a steamboat for an injury sustained by the fall of a small boat which was hung over the deck and fell by the breaking of a bolt which the plaintiff contended that the defendants negligently provided of insufficient strength, *Held*, that the defendants might show what instructions they gave the builder concerning the construction of the small boat, if such instructions related to the strength of the bolt.

On the trial of an action by a passenger for an injury sustained by the fall of a small boat which was hung over the main deck of the defendants' steamboat and fell by the breaking of a bolt in its fastenings, which the plaintiff contended was negligently provided of insufficient strength, at a time when several persons were in it, whom the plaintiff contended were negligently permitted to be there, the judge, after calling the attention of the jury to testimony which tended to show that passengers had been seen in the small boat on previous occasions, instructed them that, if the defendants knew of this or might with proper vigilance have known of it, and if the fastenings were not strong enough for a boat liable to be so used, and the defendants knew of such liability and made the fastenings no stronger, the defendants would be responsible. *Held*, that this instruction was defective, in that it allowed the jury to hold the defendants responsible, if the fastenings were in fact not strong enough, although the defendants might have had no notice of their weakness, and might not by the utmost care and skill have been able to ascertain it; and that this defect was not supplied by a general statement, in an earlier part of the instructions, that to entitle the plaintiff to recover he must satisfy the jury that the injury which he sustained was occasioned by the negligence of the defendants.

TORT for injuries sustained by the plaintiff while a passenger on board of the defendants' steamboat.

At the new trial in the superior court, before *Reed*, J., after the decision reported 97 Mass. 361, evidence was introduced showing substantially as at the former trial that on August 12, 1865, the plaintiff was a passenger on a steamboat, which was owned by the defendants and managed and navigated by their servants, for a trip from New Bedford to Martha's Vineyard, to attend a religious camp-meeting; that the steamboat was crowded, some of the witnesses estimating the number of pas-

sengers as two thousand five hundred; that, shortly after it left New Bedford, the plaintiff took his position in a place on the main deck, over which, outside of the rail of the promenade deck, the larboard small boat was suspended by tackle fastened by hooks to rings at its bow and stern attached to bolts driven into the woodwork; that persons were in the small boat at this time, and soon afterwards other persons got into it, after which, and while they were in it, about fifteen minutes from the beginning of the voyage, the stern bolt broke, and it fell, and struck the plaintiff on the head; and that on previous occasions passengers had been seen in this small boat. The plaintiff sought to charge the defendants with negligence in permitting persons to be in the small boat, and in providing an insufficient bolt.

It appeared that there was another small boat hung on the starboard side of the steamboat; and Otis L. Hitch, one of the passengers on the same trip, and called as a witness for the plaintiff, was asked by the plaintiff " whether he saw any passenger in the starboard boat on this trip; to which inquiry the defendants objected, but the judge permitted the question to be put, the defendants excepting, as tending to show the crowded state of the boat," and the witness answered in the affirmative.

Andrew J. Pierce, the defendants' treasurer, was called as a witness in their behalf; and, " having testified that he had the charge for the company of procuring the building of the lar board small boat, and that he employed Thomas N. Allen, a boat builder of high reputation, to build the same, was asked what directions he gave to Allen as to building the boat, which question was objected to by the plaintiff and excluded by the court."

At the close of the testimony, the defendants requested the judge to rule that on the whole evidence they were not guilty of negligence, and to direct a verdict in their favor accordingly; but he refused to do so. They then presented certain prayers for instructions, the eighth of which was as follows: " If the accident happened from a hidden and internal defect, the existence of which they could not reasonably be expected to know, which a careful and thorough examination would not

disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the defendants are not liable." Before the judge passed upon these prayers, they were examined by the counsel for the plaintiff, who made objections or asked qualifications as to each one of them; those as to the eighth prayer being as follows: " Even if the jury are satisfied that the particular defect which caused the boat to break down could not have been detected beforehand by human foresight, yet if the defendants had reason to know that there would be likely to be some defect in the boat or its fastenings, against which their utmost foresight had not provided and could not provide, and that for that reason it was unsafe for passengers below to suffer persons to ride in it, and they were in fault in not preventing their entrance, they may be liable." The judge then declined to give the instructions asked for, without the qualifications; and, in submitting the case to the jury, instructed them, " among other things, that the plaintiff, in order to entitle himself to recover, must satisfy them that at the time of the disaster he was in the use of ordinary care, and that the injury which he sustained was occasioned by the negligence of the defendants; that the defendants were bound to use the utmost skill and care so to arrange and suspend the boat in question that it should not endanger passengers by falling on them or getting out of place in consequence of any such acts of carelessness or recklessness of passengers, in getting into it or while in it, as the defendants might reasonably have anticipated; that in arranging and fastening the boat the defendants were bound to consider the business in which the steamboat to which it was to be attached would be engaged, the kind of excursions it would make, and the number and character of passengers it would on such occasions carry, and whether persons among such passengers on such occasions would or not probably be reckless or unruly; that if the jury found that the boat had been so arranged and secured as to be sufficient for any exigency which the defendants could so reasonably have anticipated, the plaintiff could not recover unless he had satisfied the jury that, since the fastenings of the

boat had been applied, something had occurred within the defendants' knowledge which called for an increase of the strength of the fastenings of the boat; and in this connection the attention of the jury was called to certain testimony tending to show that on several occasions passengers had been seen before the accident riding in said boat, and the jury were instructed that, if the defendants knew of this or might with proper vigilance have known of it, and if the jury were satisfied that the fastenings of the boat were not sufficiently strong for a boat liable to be used for such a purpose, and that the defendants knew that it was liable so to be used and made the fastenings no stronger, they would be liable."

The jury found for the plaintiff, with damages in the sum of $11,100; and the defendants alleged exceptions, which were argued at Boston November 14, 1868.

*F. H. Dewey & J. C. Stone,* ( *W. W. Crapo* with them,) for the defendants.

*P. E. Aldrich & G. F. Hoar,* for the plaintiff.

FOSTER, J. 1. When this cause was previously before the court, we held that the habit of the passengers to get into the starboard boat was inadmissible to show that a similar use of the larboard boat, the falling of which caused the accident, was known to or permitted by the officers of the steamboat. At the last trial, the plaintiff asked one of his witnesses whether he saw any passenger in the starboard boat on the trip when the accident occurred. This question was objected to by the defendants, but admitted by the court " as tending to show the crowded state of the boat." We cannot perceive that it had any such tendency. It does not seem to have been a part of a general description of the number of passengers, the parts of the boat which they filled, or its condition in respect to being crowded. It was apparently a single, distinct question, intended to show that one or more passengers did occupy the starboard boat, and, when introduced in such a manner, it would seem to be obnoxious to the same objection which induced the court once before to grant a new trial because of the admission of nearly the same kind of evidence. If this were the only objection to the

present verdict, we certainly should pause and scrutinize it care-fully before allowing the verdict to stand; because we are apprehensive that it may have operated unintentionally as an evasion of our former decision. But our conclusions upon an-other point have rendered the precise determination of this one unimportant.

2. The offer to show the instructions given to the boat-builder by whom the small boat was constructed would have been ad-missible, if they related to the particular in which the alleged defect consisted, viz: the strength of the bolt the breaking of which caused the accident. Upon the question whether the corporation had been negligent in allowing a bolt to be put into the small boat of insufficient strength, it could be shown that directions were given to have the particular bolt of the best kind and of sufficient size, or that general orders were given to have the materials all of the safest kind. The fact that thoroughness and carefulness in all respects had been directed to be used in the construction of the small larboard boat was competent evi-dence to rebut the charge of negligence. But it may be doubt-ful whether the defendants pointed out to the presiding judge the object of their proposed inquiry sufficiently to entitle them to a new trial for the rejection of this offer of proof.

3. One instruction actually given was palpably erroneous, and, taken separately, is conceded to have been so, by the plain-tiff's counsel. The learned judge called the attention of the jury to "certain testimony tending to show that on several oc-casions passengers had been seen before the accident riding in the larboard boat, and the jury were instructed that if the de-fendants knew of this, or might with proper vigilance have known of it, and if the jury were satisfied that the fastenings of the boat were not sufficiently strong for a boat liable to be used for such a purpose, and that the defendants knew that it was liable to be so used and made the fastenings no stronger, they would be liable." This would not be true unless the de-fendants knew, or by due diligence might have ascertained, or had reason to believe, that the fastenings of the small boat were insufficient in strength. The jury were allowed to hold the de-

fendants liable if the fastenings were in fact not strong enough, although the defendants might have had no notice of their weakness, no reason to suspect their insufficiency, and even although it could not have been detected or ascertained by the utmost care and skill. But it is said that the confessedly essential qualification was inadvertently omitted from this part of the instructions; that the omission was supplied by other parts of the charge; and that, taking the whole together, the true rule was laid down, and the jury could not have been misled. If we could see this, we certainly should not disturb the verdict merely because each sentence or paragraph did not by itself contain all needful qualifications and limitations, a thing rarely to be found in the most careful and accurately written compositions. In a previous part of the charge, the jury had been told, in general terms, " that the injury must have been occasioned by the negligence of the defendants." But this general statement did not in our opinion practically compensate for the defect in that portion in which their attention was specifically directed to the strength of the bolt. The other rulings reported are statements of the extent of skill and care required of the defendants as common carriers, but do not define the limits thereof. In making them, the mind of the court was apparently occupied in declaring how far the liability would go, rather than where it would stop. They were unobjectionable, but not calculated to correct the effect of the erroneous ruling that has been pointed out. Of this character was the statement that the defendants were bound to use the utmost care and skill in arranging and suspending the boat so as to guard against such careless and reckless acts of passengers as could reasonably be anticipated. But, when the court came to make a statement of the limits of the defendants' responsibility in this respect, the language used was, that, if the boat had been so arranged and secured as to be sufficient for any exigency which the defendants could reasonably have anticipated, then the plaintiff could not recover unless something had subsequently occurred within the knowledge of the defendants requiring an increase in the strength of the fastenings. This statement makes the mistake of setting up as the standard actual

sufficiency of strength in the fastenings for all exigencies to be anticipated. And it certainly had no tendency to correct the serious error already pointed out, which is contained in the next sentence. Where one erroneous statement of the law has been made, we cannot refuse to sustain an exception, unless it clearly appears that no injury resulted. *Greene* v. *White*, 37 N. Y. 405. The eighth prayer for instructions made by the defendants was refused, and it related to the very point in which the ruling we are now commenting upon appears to have been defective. We are far from satisfied that the general statement of the doctrine that the defendants were liable only on the ground of negligence was sufficient to prevent the jury from being misled by the express announcement of a rule more stringent than the law imposes on carriers of passengers. This exception must therefore be sustained, and a new trial becomes necessary.

4. The question, whether there is any such evidence of negligence as would warrant a jury in finding a verdict against the defendants, remains to be disposed of. The principles upon which a question of this description must be determined are familiar, but their application is often very difficult and imposes on the court one of the most delicate and responsible duties it can be called upon to perform. At the next trial the evidence may not stand precisely as it did at the last. We therefore for the present forbear to express any opinion on this topic.

*Exceptions sustained; new trial at the bar of this court.*