BENJAMIN R. BRYANT *vs.* ISAAC RICH & others.

Common carriers of passengers by a steamboat are liable for an assault and battery committed by their steward and table waiters on a passenger upon his interference by a proper remark with their rude treatment of his relative, a fellow-passenger, in reference to a meal which he had taken on the boat.

Whether an action brought in the courts of this Commonwealth against several defendants can be removed by part of them into the circuit court of the United States under the U. S. St. of 1867, *c.* 196, *quære.*

*It seems,* that an action, in which the plaintiff and some of the defendants who are real parties in interest are citizens of this Commonwealth, cannot be removed into the circuit court of the United States under the U. S. St. of 1867, *c.* 196.

An action in which a verdict has been rendered in the courts of this Commonwealth, and exceptions taken at the trial have been overruled by this court, cannot, pending a motion for a new trial for excessive damages, be removed into the circuit court of the United States under the U. S. St. of 1867, *c.* 196.

TORT by a passenger on the steamboat Eastern Queen against her owners, for personal injuries sustained by him upon a passage on that boat from Boston in this Commonwealth to Gardiner in the state of Maine, September 12, 1868. Writ dated December 18, 1868. Three of the defendants were citizens of Maine, one of Missouri, and the other five defendants and the plaintiff citizens of Massachusetts.

The declaration alleged that the defendants, being under the obligation, towards the plaintiff, of common carriers of passengers, in respect to said passage, "so carelessly, negligently and improperly conducted themselves in that behalf, that they did not transport the plaintiff with reasonable comfort and safety, and did not use due and proper care and skill, in and about the carrying

Bryant *v.* Rich.

of the plaintiff upon said journey, and did not exercise the utmost care and vigilance in selecting proper agents and servants in the business of running said steamboat, and in attending to the comfort and safety of the passengers thereon, including the plaintiff, and in maintaining order upon said steamboat, and in guarding the plaintiff against violence, from whatever source arising, while he was a passenger upon said boat," and permitted the plaintiff to be assaulted and beaten by their agents and servants, to his great personal injury. The answer was a general denial.

At the trial in the superior court, before *Pitman*, J., the evidence introduced by the plaintiff tended to prove that the facts were as follows:

The defendants were common carriers of freight and passengers, and the plaintiff was a passenger upon their steamboat on the alleged trip from Boston to Gardiner. During the passage, and shortly after the passengers had risen from the supper-table, which was spread in the lower saloon, one of the waiters accused a passenger named Coggin of not having paid for his supper, and a conversation occurred between them on the subject, at which the plaintiff was not present. The plaintiff, a few minutes afterwards, came down from the deck into the saloon in search of Coggin, who was his cousin; and found him seated and talking with two of the passengers. While the plaintiff stood near them, the steward of the steamboat came forward, and, addressing Coggin and his two companions, said, " One of you three fellows has not paid for your supper." Coggin replied, "I suppose you mean me; it is the third time you have been to me; I have paid for my supper," and then drew some money from his pocket, saying, " Here is the half dollar you gave me back; but rather than have any trouble I will pay you for it again." The plaintiff put his hand on the steward's shoulder and said, " This cousin of mine is a good honest boy, and would not cheat you out of anything; and I will pay you rather than have any trouble." The steward replied, "Very well; if he has paid, all right," and walked away to where some of the waiters were clearing off the table. One of these waiters said to the steward, with an oath, " He has not paid for his supper;" the steward replied, " Clean him out;" and the steward

and one or two of the waiters then walked towards Coggin. One waiter said to Coggin, " Have you got a berth ? " and he answered, " I have." The waiter then said, " Damn you, get into it." Thereupon the plaintiff remarked to Coggin, " I do not think that they have any right to order you to get into your berth until you get ready to." The waiter replied, " Damn you, you take it up ; " and struck the plaintiff, who said, " Hold on, what have I done ? " The waiter nevertheless struck him again ; as did also the steward and the other waiters, according to some of the witnesses. Neither the plaintiff, nor Coggin, nor any of the passengers, (a large number of whom immediately assembled,) struck the steward or waiters. The plaintiff was struck several times, knocked down upon the floor, and seriously injured. The assault lasted, according to the different estimates of the witnesses, from ten seconds to ten minutes. There was no evidence of loud noise or shouting. A crowd of passengers gathered around the waiters, the plaintiff, Coggin, and the two companions of Coggin, as soon as the striking began. Soon after the plaintiff was first struck, the mate of the steamboat came down into the saloon, rushed into the crowd, throwing them aside with his arms extended, picked up the plaintiff after he had fallen, and removed him to another part of the steamboat to be taken care of. The waiters immediately returned to their work, and the passengers dispersed.

The foregoing is the substance of all the evidence offered by the plaintiff, except upon the question of the amount of damages. The defendants offered no evidence, and requested the judge to instruct the jury as follows :

" 1. That, upon the evidence offered, the plaintiff is not entitled to maintain the action.

" 2. That there is no evidence that the steward and waiters, in assaulting the plaintiff, were acting within the scope of any authority, or in the discharge of any duty, imposed upon them by the defendants.

" 3. That there is no evidence from which the jury are authorized to find what was the scope of the authority and duties imposed on the steward or waiters by the defendants, or whether

they, or either of them, were authorized in any case, and if so in what cases, to use force towards any person on the boat.

" 4. That there is no evidence that the defendants had failed to exercise proper care in the selection of a suitable steward and waiters upon the boat.

" 5. That there is no evidence that the defendants had failed to exercise proper care in the selection of suitable officers and a sufficient number of them for the boat.

" 6. That if the defendants had been guilty of no want of care in providing a suitable boat and proper officers and employees to manage the same, they are not liable for an assault upon the plaintiff committed by one or more of their employees, not acting at the time in the discharge of any duty imposed upon him or them by the defendants.

" 7. That there is no evidence that the officers of the boat did not interfere and protect the plaintiff as soon as they were apprised of the assault, or that there was any want of care on their part, for which these defendants would be responsible, in their not knowing earlier of the assault.

" 8. That the fact that the servants of the defendants made an unjustifiable assault on the plaintiff is no evidence that the defendants failed to exercise proper care in the selection of their servants.

" 9. That the defendants were not bound to anticipate that violence might be committed upon the plaintiff or any one else, by any of their servants or passengers, and were not bound to protect the plaintiff against the possible violence of such servants or passengers, unless they had previous notice of some disposition on the part of some one or more of them, or of some circumstances or state of things, calculated reasonably to cause them to apprehend such violence, and in this case there is no evidence that they had any such previous notice.

" 10. That the general knowledge and common experience of the jury, of the acts done by stewards or waiters on steamboats on which the jury, or some of them, may have been, does not authorize them, in this case, to find that the steward and waiters on the Eastern Queen had authority from these defendants to do

such things as the jury or some of them may have seen other stewards or waiters do, and cannot be regarded by them in determining the scope and authority of the duties of the steward or waiters on this particular occasion.

"11. That the fact that, after the assault was committed, the plaintiff was taken to a state-room and there treated, whether properly or improperly, for his injuries, is entirely immaterial in determining the question of the defendants' liability in this action."

The judge ruled in accordance with the second, third and eleventh prayers, but declined to give the other instructions prayed for, and instructed the jury as follows:

"The defendants, as common carriers of passengers, are bound to use the utmost care which is consistent with the nature and extent of the business in which they are engaged, in the transportation in safety of their passengers. This duty requires not only such care in the management of the vehicle itself, but in providing and maintaining all such reasonable arrangements in regard to the control, discipline and supervision of all persons on board, as the safety of passengers may require, as a prudent man would to guard against all danger from any source arising which may naturally and according to the usual course of things be expected. And, applying this rule a little more exactly to the circumstances of this case, the precise rules of duty, to which, as applicable to the circumstances of the case, the defendants are to be held, are these: They are bound to select and employ a sufficient number of suitable and competent servants, to meet any exigency which they might, in the exercise of the greatest vigilance and care consistent with the nature and extent of their business, have reasonably anticipated; they are bound to exercise the same degree of care, in maintaining order and guarding the passengers against violence, from whatever source arising, which might reasonably be anticipated or naturally be expected to occur in view of all the circumstances of the case; and all the agents and servants of the defendants are bound, in their respective spheres of duty, to protect a passenger against acts of violence of their employees, as well as of strangers, so far as the same is rea-

sonably in their power ; when actual violence has commenced, it then becomes the further duty of the defendants, through their appropriate servants and agents, to do all that circumstances allow to check and prevent the continuance of such violence upon their passengers, and if they fail to do all that they could or ought to have done to stop a continuing assault upon the plaintiff, then, for any injury resulting from such negligence after the assault might have been checked as above, the defendants are liable. This last proposition is given in view of the evidence in regard to the length of time in which the assault continued. They are bound to exercise such police arrangements as you in the exercise of your judgment shall think were reasonable to prevent an assault. They are not absolute insurers against assaults. There may be assaults, and this may be an assault, against which no reasonable measures of precaution could have insured any one. You are to apply the rule that I have given, and see whether or not they have used that degree of care and supervision which was reasonable on their part, to protect passengers against acts of violence of their employees as well as strangers. If you find that they have not, then of course the plaintiff is entitled to recover. If you find that, so far as the assault is concerned, it was impossible for them to prevent it, then you have a further question to consider. As to the time of the continuance of the assault, the witnesses put the period varying from ten seconds to ten minutes. Of course, if the transaction was but ten seconds, this instruction would be entirely outside and of no practical use. If the transaction was ten minutes, it would be for you then to apply the rule that I have stated, and for you to say, if there was a sudden assault, (as the evidence in one aspect of it would tend to show,) a sudden attack by one of the waiters, whether there was time for their employees or servants to have interfered and checked the progress of the assault. If they did not interfere, and had an opportunity to interfere ; if, instead of interfering and checking, they encouraged, or stood by indifferent to the matter ; if they did not do all that could be done, then they are responsible. In other words, if the defendants are not responsible for tortious acts outside of the employment of the servant, they are respon

sible at all times for the care taken by their servants, ard negli·
gence is something for which they are always responsible —
negligence within the rules I have given you.   And it is for you,
looking at the matter as reasonable, practical men, to find then
whether they were guilty of negligence in this matter.   The acts
of their servants are acts of the company ; and if they are neg-
ligent, the company is chargeable in this action.   If they were
guilty of negligence, then of course the company is liable.   If
you find that the defendants were negligent in regard to the
proper arrangements of the boat and the care to be exercised in
preventing an assault — precautionary measures — then of course
they are liable for all the consequences of that neglect upon the
plaintiff.   If there was neglect in their interference, then it would
be for you to say for what portion of the plaintiff's injury they
were answerable, after they might have interfered and did not
interfere.   However difficult that may be, if you are brought to
that posture of the case it would be for you to apply your best
judgment.   If all was done, in this particular, that reasonable
men would say was proper and right under the circumstances,
that is all that is required ; but less will not suffice.   So that we
come back very much to your own judgment as to what, under
all the circumstances of this case, could have been reasonably
expected."

In regard to the defendants' tenth prayer, the judge instructed
the jury specially as follows : " The acts done by the steward
and waiters on this occasion, as matters of law, were not within
their scope and authority ; and as to the duties of the steward or
waiters, as bearing upon any other part of the case, you will be
governed, as upon every part of this case, solely by the law and
the evidence given you, and no facts known to any or all the jury
outside of these can properly be considered ; but if the common
knowledge and common experience of the jury help them to in-
terpret and understand the evidence and the application of the
law thereto, it is impossible, if it were desirable, to exclude it
from their minds.   That is to say, you have a right to use all
your knowledge in the application of your judgments to the facts
but you are to take the case as developed by the evidence on the
stand."

The judge further instructed the jury : " The action is against the common carrier for negligence, and, the gist being for negli-gence on the whole case, the jury are to be satisfied that the defendants were or were not negligent. It may happen, from some development of the plaintiff's case, that it presents such a case as calls upon the defendants for an explanation. Upon the whole matter, the jury must be satisfied that, within the rule of law, there was some degree of negligence on the part of the defend·ants."

After the foregoing instructions had been given, the defendants made a request for the following ruling : " If the steward and waiters were engaged in making the assault, the defendants are not liable for their negligence in omitting to stop it, any more than they are for making it." The judge declined to adopt this ruling, but instructed the jury thus : " The servants and employees would not be excused from any rule of diligence because they chose to add to negligence a violation of the law. The same rule of diligence would be equally upon them, and the corporation would be equally answerable for their negligence, as if they were not engaged in the assault."

Finally, in response to the request of a juror for further instructions as to what was the scope of the respective duties of the employees on the steamer, the judge instructed the jury : " You must exercise your own judgment. No evidence has appeared in regard to the respective duties of the officers of the boat. The duty of the employees of the boat must depend upon circumstances. The duties of the officers must be different, under certain circumstances, from what they would be under other circumstances; and there may be emergencies which would call upon the officers to perform still different duties. There can be no law in the matter. You are to use your own judgment."

The jury returned a verdict for the plaintiff, with damages in the sum of $8000, and the defendants alleged exceptions.

*T. H. Sweetser & R. M. Morse, Jr., (C. P. Greenough* with them,) for the defendants.

*C. R. Train & J. Q. A. B-ackett*, for the plaintiff.

CHAPMAN, C. J. The defendants were carriers of passengers upon their steamboat, and the plaintiff was a passenger paying fare and having the ordinary rights of passengers. The steward and some of the table waiters wrongfully knocked him down and maltreated him.

The case thus presented differs in one respect from that of *Howe* v. *Newmarch*, 12 Allen, 49, for in that case the plaintiff was a stranger both to the master and the servant. But here the plaintiff is entitled to all the rights which he derived from the contract of the defendants as carriers. The implied contract differs in some respects from that of carriers of goods. So far as this case is concerned, we have only to consider what it is in respect to the conduct of their servants. Nor do we deem it necessary to consider what it is in regard to selecting suitable persons as servants, or in regard to retaining incompetent servants after notice of their incompetency; for there is nothing in the bill of exceptions tending to show that they were in fault in this respect. We shall consider the matter on the assumption that they had not been negligent in selecting or retaining their servants.

As a general rule, the master is liable for what his servant does in the course of his employment; but in regard to matters wholly disconnected from the service to be rendered the master is under no responsibility for what the servant does or neglects to do. The reason is, that in respect to such matters he is not a servant. *Aldrich* v. *Boston & Worcester Railroad Co.* 100 Mass. 31. If therefore any of the officers or men connected with the running of the defendants' boat had met the plaintiff in the street or elsewhere, in a position wholly disconnected with their duties to the defendants, and committed an assault and battery upon him, it is clear that the defendants would not have been liable.

There are two views which may be taken in the present case. One is the view which was taken by the court in *Philadelphia & Reading Railroad Co.* v. *Derby*, 14 How. 468. The plaintiff in that action was riding gratuitously; and the court held that the company were liable to him, not on the ground of a contract be-

tween the parties, but because he was injured by their careless-
ness when he was where he had a lawful right to be. But as the
plaintiff in this case was a passenger for hire, we think it better
to consider what the contract was between them. This has been
discussed in the following cases: *Chamberlain* v. *Chandler*, 3
Mason, 242; *Nieto* v. *Clark*, 1 Clifford, 145; *Baltimore & Ohio
Railroad Co.* v. *Blocher*, 27 Maryl. 277; *Pittsburg, Fort Wayne
& Chicago Railroad Co.* v. *Hinds*, 53 Penn. State, 512; *Sim-
mons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97
Mass. 361, and 100 Mass. 34; *Milwaukee & Mississippi Rail-
road Co.* v. *Kinney*, 10 Wisc. 388. It has also been thoroughly
discussed in *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202.
These cases were cited by Clifford, J., in *Pendleton* v. *Kinsley*,
Rhode Island Circuit, June 1870, not yet reported, and the terms
of the contract for carriage by water are well stated by him in
conformity with the authorities, as follows : " Passengers do not
contract merely for shiproom and transportation from one place
to another ; but they also contract for good treatment, and
against personal rudeness and every wanton interference with their
persons either by the carrier or his agents employed in the man-
agement of the ship or other conveyance." In respect to such
treatment of passengers, not merely the officers but the crew are
the agents of the carriers. In *Chamberlain* v. *Chandler*, 3 Ma-
son, 242, cited above, Story, J., says that kindness and decency
of demeanor is a duty not limited to the officers, but extends to
the crew.

The interpretation of the contract of the carrier which is given
in the cases above cited is not unreasonable. It is not more ex-
tensive than the necessities of passengers require. Nor is it diffi-
cult to perform. The cases in which it is violated by servants,
even of the lowest grade, on board a ship or engaged in the man-
agement of a railroad train, are rare, and the carrier rather than
the passenger ought to take the risk of such exceptional cases,
the passenger being necessarily placed so much within the power
of the servants.

In this case, the servants who committed the wrong, being the
steward and table waiters, were those who were engaged in pro-

viding meals, waiting on the tables and collecting the pay for meals. They were treating the plaintiff's relative with gross rudeness in connection with this business, and the plaintiff interfered only by a remark that was proper, whereupon the assault was committed. It was not as if a quarrel had occurred on shore and disconnected with the duties of these persons on shipboard. It violated the contract of the defendants as to how the plaintiff should be treated by their servants who were employed on board the ship and during the passage. For a violation of such a contract either by force or negligence, the plaintiff may bring an action of tort, or an action of contract.

There were many prayers for instructions, and many instructions were given to the jury in application to the various aspects of the case; but in our view many of them were immaterial. Some of them were too favorable to the defendants, and only one of them could have been injurious to them.

In answer to a request from a juror as to what was the scope of the respective duties of the employees on the steamer, the court replied, in substance, that the jury must exercise their own judgment — that it must depend on circumstances — there could be no law in the matter, and the jury were to use their own judgment. A correct answer would have been, to state the contract which the carriers had made, and instruct the jury that each of the hands employed on board the ship was bound to do faithfully the duty assigned to him in the performance of this contract, and not one. of them was at liberty to do an act in violation of it, and if he did so, the defendants were liable. But there is nothing in the bill of exceptions to show that it applied to any matter that is material; for the instructions already given had stated the liability of the defendants too narrowly.

*Exceptions overruled.*

After this decision, the defendants moved the superior court, in conformity with its rules, to set aside the verdict and grant a new trial on the ground that the damages were excessive. Before a hearing was had on this motion, those of the defendants who were citizens of Maine made and filed, in accordance with the

U. S. St. of 1867, *c.* 196, (14 U. S. Sts. at Large, 558,) an affidavit and a petition for the removal of the suit to the next circuit court of the United States to be held in this district, and offered good and sufficient surety for the entry in that court of copies of all proceedings, as required by that statute, and filed such copies in that court. The plaintiff objected to such removal, on the ground that the petition was filed too late, and *Pitman,* J., on that ground declined to grant it; and the defendants alleged exceptions, which were argued in November 1871.

*Morse,* (*Sweetser* with him,) for the defendants.

*Brackett,* (*Train* with him,) for the plaintiff.

GRAY, J. The objections to the granting of the petition for the removal of this case into the circuit court of the United States under the act of congress of 1867, *c.* 196, are manifold.

The act of congress provides that any suit in a state court, "in which there is a controversy between the citizen of the state in which the suit is brought and a citizen of another state," and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, may be removed into the circuit court of the United States upon a petition, filed in the state court "at any time before the final hearing or trial of the suit," by "such citizen of another state, whether he be plaintiff or defendant," accompanied by his affidavit "that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court," and by an offer of sufficient surety for the entry of the case and copies of the papers therein in the federal court; and "it shall be thereupon the duty of the state court to accept the surety and proceed no further in the suit," and, the copies having been entered in the United States court, "the suit shall then proceed in the same manner as if it had been brought there by original process."

1. The petition in this case is filed by three only out of nine defendants. We have much doubt whether, when the party in whose behalf the petition is filed consists of several persons, the petition can be supported unless all of them join therein. The construction uniformly put upon the similar provision in the judiciary act of 1789, *c.* 20, § 12, has been that all must join in the

petition for removal. *Ward* v. *Arredondo*, 1 Paine, 410. *Beards-ley* v. *Torrey*, 4 Wash. C. C. 286. *Smith* v. *Rines*, 2 Sumner, 338. *Ex parte Girard*, 3 Wallace, Jr., 263.

2. This is an action of tort, which may be maintained against all or any of the wrongdoers, jointly or severally. If it should be deemed to have been duly removed into the federal court so far as the petitioners for such removal are concerned, no reason has been shown why it should not proceed in the state courts as against those defendants who do not seek to remove it into another jurisdiction, and who are themselves each liable for the entire damages which may be finally recovered. *Smith* v. *Rines*, above cited.

3. Five of the nine defendants in this case, as well as the plaintiff, are citizens of this Commonwealth; and the courts of the United States are not authorized by the Constitution to take jurisdiction, so far as it depends upon the citizenship of the parties, of suits between citizens of the same state, but only of suits between citizens of different states or between a citizen and an alien, and can therefore have no jurisdiction (except when it grows out of the subject matter) of an action in which any of the plaintiffs and of the defendants, who are real parties in interest, by or against whom relief is sought, are citizens of the same state. Const. of U. S. art. 3, § 2. *Strawbridge* v. *Curtiss*, 3 Cranch, 267. *New Orleans* v. *Winter*, 1 Wheat. 91. *Wood* v. *Davis*, 18 How. 467. *Tuckerman* v. *Bigelow*, 21 Law Reporter, 208. *Wilson* v. *Blodget*, 4 McLean, 363. *Cases already cited.*

4. The words " before final hearing or trial " in the act of congress of 1867 would seem to be equivalent in meaning to the same words — " trial or final hearing " — as transposed in the similar act of 1866, *c.* 288 ; and it is at least doubtful whether a party, who has once taken the chance of a decision upon the merits by a a trial before the jury in an action at law, or a hearing before the court in a suit in equity, in the state court, can, even if the case stands open for a new trial or further hearing, remove it into another tribunal. It has been decided by the supreme court of Wisconsin in a very able judgment that he could not. *Akerly* v *Vilas*, 24 Wisc. 165. There have been decisions of single judges

of the federal courts within the same circuit to the contrary. *S. C.* 1 Abbott U. S. 284. *Johnson* v. *Monell*, Woolworth, 390. It cannot therefore be deemed to be authoritatively settled whether a case can be removed into the courts of the United States after one verdict has been returned and set aside in the state court. And it is not necessary for us now to decide that question.

5. In the present case, the verdict has not been set aside, the exceptions taken at the trial have been overruled by this court, and the only question remaining to be disposed of is upon the motion for a new trial on the ground that the damages found by the jury were excessive. The 7th article of amendment of the Constitution of the United States declares that "no fact tried by a jury shall be otherwise reëxamined in any court of the United States than according to the rules of the common law." It was long ago decided by this court, and more recently by the supreme court of the United States, that an act of congress providing for the removal of an action into the courts of the United States for trial, after verdict and judgment in a state court, was a violation of this article of the Constitution. *Wetherbee* v. *Johnson*, 14 Mass. 412. *Parsons* v. *Bedford*, 3 Pet. 433. *Justices* v. *Murray*, 9 Wallace, 274. The reasons given for those decisions are equally applicable to a case in which a verdict has been rendered and has not been set aside, and no question of law remains open; for by the rules of the common law facts once tried by a jury cannot be reëxamined except by a motion for a new trial, and that motion can only be granted by the court which ordered the trial and before which it was had. 14 Mass. 420. 3 Pet. 448. 9 Wallace, 277, 278. The act of congress cannot therefore be construed to authorize this action to be removed into the circuit court of the United States at the present stage, and the superior court rightly ruled that the petition for removal was filed too late.                              *Exceptions overruled.*