Bissell, P. J.,
delivered the opinion of the court.
Herein is involved'the liability of a street railway company for the acts of its employees which infringe the light of a passenger and result in injury. In the present case there is only a very slight element of bodily harm; but the ejection of the passenger gave him a right of action, unless the act was justified by the facts.
About some of the facts there is no disagreement, although most of the important ones are in dispute. In December, 1891, James Reed was a passenger on one of the cars belonging to the Tramway Company, and was riding on what is known as the “ Berkeley Electric ” line,' near the junction of Ashland street and Gallup avenue, between the towns of Highlands and North Denver, in Arapahoe county. He was on that car by transfer, but he had evidence of his light to ride and had paid his fare. The car was under the charge of Ashton as conductor, and Brooks as motorneer. The car itself Avas like the ordinary railway coach with seats on either side of an aisle running through the center. Reed was sitting on the inside of one of the seats, and riding with his brother. There were quite a number of other passengers on the car, and among them two or three ladies. At about the time Reed surrendered his transfer ticket, he had a partly smoked cigar in his mo.uth, and this, with his subsequent conduct, gave rise to the difficulty. Thus far there is no dispute. The rest of the narrative will be stated according to the appellee Reed’s contention, because, while the substance of it was completely denied by the conductor and some other witnesses, the jury found the facts to be as Reed stated. His statement, therefore, will be accepted as the basis of the decision, and there will be no attempt to support his story by arguments, and we shall be content with the suggestion that since, under the instructions, the verdict could not have gone for the plaintiff had the jury found the facts to he *502 otherwise, their verdict will be taken as conclusive upon these matters. When the conductor passed through the caito collect his fares and take up his transfers and noticed the cigar in Reed’s mouth, he stated that smoking was not allowed. Reed’s response was undoubtedly tantalizing-, and calculated to annoy and fret the conductor; but it was neither abusive nor profane, and did not transcend the limits which are usually conceded to be the privilege of one of the kings of our country. As a matter of fact the cigar was not lighted, and Reed was not smoking, so the jury said. The conductor repeated his order to Reed to desist, and Reed’s brother, who evidently observed that James was a little quarrelsome, induced him to remove it. At any rate the cigar was removed and placed in Reed’s pocket or on the floor — it is unimportant which. Afterwards, probably in a slight spirit of bravado, Reed proceeded to fill his pipe, and suggested that he would go on the back platform to take a smoke. He started, having one hand in his vest pocket, apparently reaching for a match, when the conductor, conceiving that he was about to smoke, without waiting for the matter to be determined, seized him by the coat and rushed him on to the back platform where a fight ensued. There was no reasonable ground for the conductor to apprehend that Reed was about to smoke, because the jury were told that if the conductor as a reasonable man had a right to believe this to be Reed’s intention, he had a right to put him off the car: The verdict negatives the reasonable ground of belief. The same thing may be said with equal force concerning another disputed proposition, and that is as to Reed’s use of obscene, profane or abusive language, or any other breach of decorum tending to annoy or disturb the passengers, or a violation of any rule of the company in relation to these matters. The jury likewise were told that the passenger had no right to provoke a conflict with the conductor, and in general was bound to conduct himself with fair regard for what would be deemed proper conduct on the part of a passenger being transported. The passenger un *503 doubtedly resisted the efforts of the conductor to eject him and attempted to remain on the car, but was finally put off, when he ran and caught the car, and attempted to re-enter it. In this attempt he was forcibly resisted by the conductor, and finally shoved on to the ground, when the fight was renewed. No other comment than what has been suggested concerning some of the other facts will be made respecting Reed’s attempt to reboard the car, because the jury were instructed that if he had been properly put off, he was without right to attempt to get on again. When the fight was renewed after this attempt, Reed seems to have been assaulted by both the conductor and motorneer, at least the motorneer was assisting the conductor in the ejection of the passenger, and in attempting to prevent him from re-entering the car. Reed’s brother tried to assist him, and the thing resulted in a sort of a free, scrambling, running fight; the conductor procured the switch-bar, which was an iron rod three or four feet long, and probably three eighths to a half inch thick; ending with a ring at one end and a flat surface at the other, from the front end of the car, and attempted to beat Reed with it. He struck him several times, but apparently did not inflict very great injury, when Reed got out a jackknife and attempted to defend himself by attacking the conductor. The conductor was somewhat cut, but this fact has very little to do with the present case. The only question about these latter facts concerns their use as proof for the purposes of aiding the plaintiff in his recovery. The circumstance of the ejection of the passenger, and probably its general history, was communicated to the foreman of the company, so that it was informed of what had transpired. The conductor was retained in the company’s employ, and was running a car at the time of the trial. Reed had a verdict of one thousand dollars, and the company appealed. The case can be properly disposed of without an expression of our views upon all the matters which have been urged upon our attention. The principal ones will be noticed and considered.
*504 A very elaborate argument has been made on the hypothesis that the position which the conductor of a railway car holds to the traveling public is a dual one ; that he is in one view simply an employee of the company, and in another a conservator of the peace. An analogy is sought to be drawn between his right to preserve the peace and. the right of a police officer to make an arrest. We are unable to recognize the force of the argument, and we are not ready to concede that the railway company can escape a liability for the acts of its servants, because of any duty which that employee may owe to the public, and because he is empowered in the discharge of that- duty and in the protection of his passengers to preserve the peace. It is too well settled to admit of argument that it is the duty of a railway company operating a railroad, or a system of surface lines within the limits of a city, to safely carry its passengers, and it must respond for the unlawful and tortious acts of its servants. The public is entitled to fair, safe and respectful treatment by the servants of the company, and immunity from injuries at their hands while it is riding. The ejection of Reed from the car as well as the circumstances of the act was a violation of this well settled rule, unless the company can support and justify the conductor by proof of facts which would warrant the expulsion. In this the company failed. The jury found that the passenger was not violating any rule of the company. This consideration disposes of the main contention that the company was not liable for Ashton’s acts.
The plaintiff alleged that he was riding peacefully and quietly, and without any cause or justification was assaulted and ejected from the car. The company claims the jury were not told that the plaintiff was bound to prove the averment. It was hardly necessary for the court to give this precise instruction, and in this language enlighten the jury as to their duty. They were substantially told that the company had a right to make all needful rules and regulations for the government of their cars, and the passengers were bound to obey them. The law, as laid down, plainly informed them that *505 smoking, the use of obscene and abusive language, or language which would tend to provoke a conflict with the conductor, would justify the use of force in putting the offending passenger off, and if they found any of these facts, their verdict must be for the defendant. This certainly is the equivalent in substance of an instruction that the plaintiff was bound to prove he was riding peacefully and quietly. It must follow, that if the passenger was in the car violating no rule, indulging in no language which outraged the proprieties or provoked a controversy, he was in the condition, and riding in the manner indicated by that phraseology of his complaint. A good deal of question has'been made on the argument and in the briefs respecting the rights of a passenger to resist removal. This right was broadly asserted by the court in its instructions and we are not inclined to question it. The law respecting these matters is tolerably well settled, and we must confess that our notions of the rights of the passenger and the duties of the conductor more nearly coincide with the views expressed by some courts which concede to the traveler the right to defend his privileges when they are illegally and unjustly assailed. Goddard v. Grand Trunk R'way, 57 Me. 202; Stewart v. Brooklyn & Crosstown R. R. Co., 90 N. Y. 588; Bryant v. Rich et al., 106 Mass. 180; Chicago & Eastern R. R. Co. v. Flexman, 103 Ill. 546; Louisville N. A. & C. R’way Co. v. Wolfe, 128 Ind. 347; Hanson v. European & North American R'way Co., 62 Me. 84; Savannah R. R. Co. v. Bryan, 86 Ga. 312; Wise v. Covington Street R'way Co., 16 South West. Rep. 351; Haman v. The Omaha R’way Co., 52 North West. Rep. 830. Booth’s Street R’way Law, § 372, et seq.
Considerable question is made on the refusal of the court tp give some instructions which were asked by the company. The jury were very fully and very accurately instructed both as to the rights of the passengers and as to the duties and powers of the company. No phase of the law of the case seems to have been overlooked, and when the seventeen instructions are taken as an entirety, it may be very safely said *506 that they fairly and correctly informed the jury as to their duties in the premises. If it should be conceded, that in some particulars they might be more aptly expressed, and that without detriment they might contain sundry limitations, for which the defendant’s counsel contends, the result is not error which can be made the basis of a reversal.
Considerable importance is attached to the admission of the proof of what occurred at the car after Reed was ejected. The ejection and light were really part and parcel of one and the same transaction, and the concluding struggle was really the result of the attempt by Reed to get on the car, and the conductor to still prevent him from riding. It was certainly competent to prove those facts, both to show what injury the passenger sustained from the continuance of the assault on the ground, and to throw light on the character of the transaction, the amount of force used, and the spirit and method adopted by the conductor in his attempt to execute what he believed to be his duty. The admission of the evidence can be justified on many grounds, and there is no evident reason why any part of the proof respecting it should have been excluded.
No complaint is made concerning the amount of the verdict, and since we conclude that the case was properly tried, we shall affirm the judgment.

Affirmed.