ELI HANSON *vs.* EUROPEAN AND NORTH AMERICAN RAILWAY COMPANY.

*Assault—justification of. Liability of common carriers for injuries inflicted by their servants upon passengers. Punitory damages.*

Railroad Companies, as well as other common carriers, are responsible for the misconduct of their servants and for assaults and batteries by them committed upon passengers, without justification; affirming *Goddard v. G. T. R. Co.*, 57 Maine, 202.

If the servant be first assaulted he may defend himself, and may use sufficient force to overcome any unauthorized opposition to his proper performance of any duty. But the assault being over, or the resistance ended, he cannot pursue and punish the wrong doer, and will make himself and the carrier both liable if he do so.

He who seeks to justify a *prima facie* case of assault must show that no more force was used than was suited in kind and degree to the exigencies of the occasion, or the justification fails.

Disobedience to the rules of a company by a passenger will justify the carrier in refusing to carry him further; but not in maltreating him while continuing to perform the contract for his conveyance.

There is sufficient in the evidence to sustain the verdict of the jury in this case. They were authorized to award punitory damages, and, though the sum given is large, the injury was severe, and we do not think the damages evidently excessive, or that the verdict should be disturbed.

'ON EXCEPTIONS AND MOTION FOR A NEW TRIAL.

TRESPASS, commenced by writ dated Sept. 1, 1871, for injuries received March 22, 1871, by the plaintiff at the hands of William Fos-

Hanson *v.* E. & N. A. R. R. Co.

ter, then a brakeman in the employ of the defendants. Ad damnum, $10,000. The plaintiff, a man forty-three years old, a lumberman, and proprietor of the Mansion House in Bangor, left his lumbering-camp to come to that city, upon the twenty-second day of March, 1871, over the European and North American Railway, intending that "his faithful dog shall bear him company." He testified that he took the train at Mattawamkeag about four o'clock in the morning, his dog entering the passenger car with him without caution or objection from anybody as to the animal going in there; that soon after the cars started, the brakeman, Foster, came in, and as he stooped to put some wood in the stove, discovered the dog lying under a seat, and after inquiring whose it was, said it was no place for him, and he "must go off this car;" at the same time taking hold of him and dragging him out into the alley; that the plaintiff thereupon, said if he would wait till they arrived at Winn, he would take the dog off himself, but that he could not let the dog be put off while the train was in motion; that when he first addressed Foster, he clapped his hand on F.'s shoulder saying, "my friend, what is the trouble? to which F. replied, "the dog must go off;" that, upon the plaintiff's repeating that the dog could not be removed while the train was moving, Foster rose right up and grabbed Hanson by the breast; whereupon he took F. by the shoulder and set him down on a seat running parallel with the side of the car, and told him to sit there; that F. drew his feet up and kicked plaintiff, breaking the pane of glass behind him in doing so, but not releasing himself; that F. asked who was going to pay for that glass, and H. said F. should; that F. then asked H. to let him up, and plaintiff said he would if F. would behave himself; and on his saying he would, the plaintiff permitted him to rise, and turned round to go and resume his own seat; when, while his back was towards F., he suddenly received severe blows with a poker, (which F. had taken from the other side of the car, where it lay by the stove) about the head and shoulders, one being directly over the eye;—which blows constituted the assault and battery, for which this suit was brought.

The medical testimony was that Mr. Hanson had a severe wound upon the temple, and two more upon the top of his head, the external table of the skull was cracked, and his eyes badly affected, indicating danger of palsy of the optic nerve and entire loss of its functions.

The poker was of iron, about two feet long, and a half-inch in diameter. The whole occurrence did not occupy more than five minutes. The court stenographer, J. D. Pulsifer, Esq., who was in the car returning home with Judge Dickerson and others, from the term at Houlton, which had adjourned the day before, was called as a witness and corroborated the plaintiff as to the fact of his having turned and entered the aisle to resume his seat, when he was struck from behind by the brakeman.

Mr. Foster, as witness for the defendant, testified that he asked for the owner of the dog, and that he (the owner) should remove the animal, but nobody answered, so he (witness) was about to take him into the baggage car, when Hanson came up and told him to let the dog alone; that the dog should not go out of the car, and Foster said he should go; whereupon (he said) Hanson caught and twitched him over a seat and jammed his head through the window; that H. had unbuttoned his coat, adding that "his (H.'s) hand was going into his breast, and I (F.) thought I would not let him shoot me if I could help myself, and I jumped right back to the stove and picked up the poker and hit him over the head with it." He swore, also, that he "told him (H.) the rules and spoke up loud enough for him to hear;" that the superintendent discharged him (F.) the next day; but on cross-examination stated that he was, at the time of trial, employed "way up on the line of the railroad" by Charles Sawyer of Bangor, who was cutting wood for the defendants, and that the defendants paid him (F.) his wages monthly. It further appeared that the only "rules" by which he was governed, upon the subject of dogs, was that "most generally" whenever the conductor saw a dog in the passenger car he would tell Foster to take him into the baggage-car.

Hanson *v.* E. & N. A. R. R. Co.

KENT, J., presiding at the trial, instructed the jury that "if Foster was acting in the performance of his duty as a brakeman, he would be justified in using a reasonable degree of force, necessary and proper to accomplish the removal of the dog from the car, but if he used more violence than was necessary, and inflicted upon Mr. Hanson blows that were unnecessary to perform his duty, the company would be liable, and the jury may, in that case, award punitive or exemplary damages."

The defendants requested an instruction that they were not liable if Hanson's conduct materially contributed to the injury; also that they were not liable if, while Foster was in performance of his duty, he was interrupted or resisted or assaulted by Hanson and afterwards a personal quarrel ensued between Foster and Hanson in which Foster inflicted the injury complained of.

The judge did not comply with these requests in the form proposed, but instructed the jury, that a passenger has a duty to perform as well as the company; he is bound to conduct in such a way as not to give excuse for violence to his person; that a person cannot go into the cars and violate the reasonable rules and regulations of the company or of propriety or decency. If he does so he cannot complain of the company for enforcing their regulations, because he himself is the party that has been guilty of wrong, and the company has done what it had a right to do. The obligations are not all on one side, but are mutual. If Foster was acting in performance of his duty as brakeman he would be justified in using a reasonable degree of force, necessary or proper to perform the act. But if he used more violence and inflicted blows that were unnecessary to perform that duty, the company would be liable. Was it necessary for him to use the poker in putting out the dog? The question is, during the whole matter, did he use violence more than was necessary?

No further instructions were given. The verdict was for four thousand dollars and the defendants excepted, and moved to have it set aside as against law and evidence and because the damages were excessive.

*Charles P. Stetson* and *J. W. Emery*, for the defendants.

I. The quarrel was personal, after the attempt to remove the dog had ceased. The assault was not within the scope of his duty; hence the defendants are not liable. *McManus v. Crickett*, 1 East, 106; *Wright v. Wilcox*, 19 Wend, 343; *Harlow v. Humiston*, 6 Cowen, 189; *Richmond v. Vanderbilt*, 1 Hill, 480 and 2 Comst. R., 482; *Thames v. Housatonic R. R. Co.*, 20 Conn., 40; *Isaacs v. 3d Av. R. R. Co.*, 47 N. Y., 122; *Roe v. Birkenhead Co.*, 6 Railway & Canal Cases, 795; *Poulton v. London Co.*, 2 Law R., 534; *Eastn. Co. v. Brown*, 6 Exch., 314; *Edwards v. London*, 5 Law R., (Com. Pleas) 545; *Walker v. South*, Id., 640; *Little Miami Co. v. Wetmore*, 18 Ohio St., 110 and 9 Am. Law Reg., 621, which is a parallel case.

II. The jury should have been told that if Hanson's conduct or want of ordinary care contributed to the injury, he was not entitled to recover. *Murphy v. Deane*, 101 Mass., 466; *Hickey v. B. & L. R. R. Co.*, 14 Allen, 429; *Todd v. O. C. R. R.*, 7 Allen, 207; *Lucas v. N. B. Co.*, 6 Gray, 64; *Gavett v. M. & L. Co.*, 16 Gray, 501; *Gonzales v. N. Y. Co.*, 38 N. Y., 440; *Bancroft v. B. & W. Co.*, 97 Mass., 275; *Nichols v. Middlesex Co.*, 106 Mass., 463; *Forsyth v. B. & A. Co.*, 103 Mass., 510; *R. R. Co. v. Aspell*, 23 Penn. St. R., 147; *P., Ft. W. & C. R. Co. v. Hinds*, 53 Penn. St. R., 512.

This is not a case for vindictive damages, as against the corporation.

*Wilson & Woodward*, for the plaintiff.

WALTON, J. Passenger carriers are responsible for the misconduct of their servants. Railroad companies, as well as other carriers of passengers, are responsible for assaults and batteries committed by their employees upon passengers. *Bryant v. Rich*, 106 Mass., 180, where the case of *Goddard v. Grand Trunk Railway Company*, 57 Maine, 202, is cited, and the carrier's liability, as there declared, approved.

This responsibility of course rests upon the assumption that the

battery·cannot be justified. If it can be, no responsibility attaches to any one. If it cannot be, both the servant and the carrier are liable.

If the servant is first assaulted, he may defend himself. If he is resisted in the performance of any duty, he may use force sufficient to overcome the resistance. But the assault being over, or the resistance ended, he cannot pursue and punish the wrong-doer.

The rule applicable to such cases is this, that when a *prima facie* case of assault and battery is sought to be justified, it is incumbent upon the one who justifies, to show that no more force was used than the exigencies of the case called for. The force used must be suitable in kind and reasonable in degree, otherwise the justification fails. *Rogers v. Waite*, 44 Maine, 275; *Brown v. Gordon*, 1 Gray, 182; *Com. v. Clark*, 2 Met. 23; 2 Greenl. Ev. § 98.

· It is the duty of the conductor, and other employees upon a train of cars, to treat the passengers with civility, and to abstain from all unnecessary violence toward them. It is also the duty of passengers to observe the rules and regulations of the company, and to conduct themselves generally so as not to invite uncivil treatment, nor provoke violence.

But it is not true that disobedience to the rules of the company will operate as a license to the employees to maltreat a passenger. If a passenger persists in violating the reasonable rules of the company, after notice of the rules, and a request to him not to act contrary to them, the carrier will have a right to rescind the contract for his conveyance, and refuse to carry him further. · But he will have no right to maltreat him while continuing to perform the contract for his conveyance.

Nor is it true that an uncivil word by a passenger at the beginning of his journey, will justify the carrier's servants in treating him with insolence to the end of it. Nor is it true that an assault, or resistance to the performance of a duty, will justify the servant in pursuing and punishing the passenger, after the assault or the

resistance is over. If he does, he makes the carrier as well as himself, liable for the injury.

If, therefore, it be true, as the defendants contend, that the plaintiff was the aggressor, that he first assaulted the brakeman and resisted him in the performance of a legitimate duty, it was still a question of fact for the jury to determine, whether the brakeman did not use greater violence than the exigencies of the case demanded ; whether he did not pursue the plaintiff, and inflict the blows upon his head with the iron poker, after the latter had ceased his assault, had ceased his resistance, and was returning to his seat with his back to the brakeman. Under the instructions of the court the jury must have so found, or they could not have returned a verdict for the plaintiff ; and in our judgment the evidence fully justified the finding.

Nor are we satisfied that the damages assessed by the jury are so clearly excessive as to justify us in setting aside their verdict. It is true that the damages are large, but it is equally true that the injury was a very severe one.

The right of the jury to give exemplary damages in this class of cases, was first declared in this state in *Pike v. Dilling,* 48 Maine, 539. The whole doctrine of exemplary damages was again fully and carefully examined in *Goddard v. Grand Trunk Railway Co.,* 57 Maine, 202, and its application to railroad companies for the wilful and malicious acts of their servants, affirmed. It is not now an open question in this State, and will not be further discussed.

We think the case was submitted to the jury upon correct principles of law, and that their verdict is neither against law, nor the weight of evidence ; nor are we satisfied that the damages are so clearly excessive, as to justify us in setting the verdict aside on that ground. The verdict must therefore stand.

*Motion and exceptions overruled.*

APPLETON, C. J., CUTTING, DICKERSON and BARROWS, JJ., concurred.

PETERS, J., having been of counsel, did not sit.