PEAVY *vs.* THE GEORGIA RAILROAD AND BANKING CO.

1. With or without a ticket, a passenger has no right to remain on a train and be carried when he is disorderly, or uses any obscene, profane or vulgar language.
2. If a disorderly passenger defies the conductor, draws a pistol, and thereby induces the conductor to arm in order to expel him from the train, and if after expulsion he still uses grossly obscene and profane language, reeking with insult, on which a mutual combat with pistols ensues, the railroad company is not liable for the consequences though the expelled passenger be wounded in the conflict, even if the conductor, excited by danger and irritated by insult, be not fully excusable for the shooting. It is unjust to a master wrongfully to unfit his servant for exercising the care and prudence which are essential in guarding the master's interest and performing the servant's duty.

December 3, 1888.

Railroads. Damages. Master and servant. Before Judge LUMPKIN. Warren superior court. October term, 1887.

Reported in the decision.

T. E. WATSON, J. S. BATTLE, J. S. GROSS and J. W. HIXON, for plaintiff.

J. B. CUMMING, W. M. & M. P. REESE and JAMES WHITEHEAD, for defendant.

BLECKLEY, Chief Justice.

The plaintiff sued upon two causes of action, (1) expulsion from the cars, and (2) the shooting of him by the conductor. There have been two trials. In the first he obtained a verdict of $1,500 ; in the second, for $2,250. The presiding judge, on each occasion, set aside the verdict, at the instance of the defendant, and granted a new trial. The second grant of a new trial is what we are now called upon to review.

1. The code, §4586(a), declares that "when a passenger is guilty of disorderly conduct, or uses any obscene, profane or vulgar language, . . upon any passenger-train, the conductor of such train may stop his train at the place where such offence is committed, or at the next stopping place of such train, and eject such passenger from the train, using only such force as may be necessary to accomplish such removal; and the conductors may command the assistance of the employés of the company and of the passengers on such train to assist in such removal."

The plaintiff, with several drinks in his bosom and a pistol in his possession, got upon a passenger-train, and the first thing he did on reaching the platform was to use profane language. The conductor, being near by and hearing him, approached and either took him by the collar or touched him on the shoulder, and admonished him not to swear. They had some conversation, and the plaintiff, with the conductor's assent, went into a car and took a seat. While there, the conductor coming in for the purpose of collecting fare or taking up tickets, the conversation between them was renewed, in which the plaintiff again cursed and used obscene language. According to the weight of the testimony, (and to any one not under the sway of interest or the spell of eloquence, it is plain what the truth of the case is,) he was profane, obscene and disorderly, and upon the conductor's trying to put him off the train, he drew a pistol. He had already said that if the conductor attempted to put him off, they would see which one "hit the ditch" first. The conductor retired, borrowed a pistol from a passenger (a sheriff on board who had a prisoner in custody), and then came up and presented his pistol, forced the plaintiff to lower his hand, and backed him off the train. When the plaintiff reached

the ground, the conductor shook his pistol in his face, and told him that if he got on the train any more he would get hurt.

If nothing else had occurred, there would have been no shooting. The conductor, up to this point, was unquestionably justifiable in what he did. But the plaintiff, after being expelled from the train and being thus admonished by the conductor, replied with grossly vituperative obscenity and profanity. His expression, as he repeats it himself in the evidence, is too foul and repulsive to be reproduced in this opinion. The moment he gave this filthy insult, the conductor shot at him, hitting him in the shoulder, and about the same time the plaintiff shot at the conductor, and they exchanged five shots, the conductor hitting three times, and not being hit at all.

According to the plaintiff's witness, Hill, after the shooting was over, the plaintiff walked up and said to the conductor if he got off the train he would whip him. The conductor went back in the car to get another pistol, and while he was endeavoring to do so some one pulled the bell-rope and the train moved off. The plaintiff, however, as it moved off, attempted to board it again, and his witness, Hill, pushed him off, telling him that if he got on the conductor would kill him. The last seen of him was by a passenger, as the train moved away, standing upon the track waving his pistol. There can be no doubt that his use of profane and obscene language, and his disorderly conduct generally, warranted the conductor in expelling him from the train. He certainly had no cause of action for that.

2. Did he have a cause of action for the shooting? But for his fault, the conductor would not have been brought into a state of excitement from danger and insult which unfitted him for discharging his proper

duties, either to the company or to the passenger. Whether the couductor was more or less in fault than the plaintiff was in the shooting, certainly the plaintiff was more in fault than the company; because the plaintiff was there upon the ground, stirring up excitement and bringing on danger both to the conductor and himself. He unfitted the conductor for exercising the care and prudence that were essential to guarding the interest of the company, and essential to performing in a proper manner his· duty to the company or to the plaintiff. The plaintiff spoiled the instrument, and then sued the manager because the performer did not make good music. It was the plaintiff's fault that the conductor was out of tune; and though the conductor might not be altogether excusable for the shooting, (according to his own evidence, however, he was excusable,) the company was .in no fault for it, and it would be unjust for the plaintiff to recover ·of the company, when he boarded its train violating the law (as we can well infer) by carrying upon his person a concealed weapon, violating the law again by swearing and using obscene language, violating the law again by committing an assault upon the conductor with a pistol, drawing the pistol and presenting it at him, and violating the law by general disorder and misconduct throughout the transaction up to the moment he was shot. We think the court below was well warranted in granting the second new trial. While a second verdict is a sacred thing, it is less sacred than the law and the substantial justice of the case. These required that another new trial should be granted.

Judgment affirmed.