ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* BERGER.

Opinion delivered January 22, 1898.

INSTRUCTION—CONDUCTOR RESISTING PASSENGER'S ASSAULT.—While, as an abstract proposition, it was error to instruct a jury that a railway company would be liable if its conductor in charge of a train used more force in repelling the assault of a passenger than was necessary to protect himself, instead of instructing them that it would be liable if such conductor used more force than appeared to him necessary, acting as a reasonable man, under the circumstances and surroundings, such error is not prejudicial if it is plain from the testimony that he used more force than was reasonably necessary. (Page 619.)

ASSAULT—BURDEN OF PROOF.—Where a conductor, assaulted by a passenger, uses force to repel such assault, the burden is on the railroad company to show that the conductor used no more force than appeared to him, as a reasonable man, necessary to repel the assault. (Page 620.)

SAME—JUSTIFICATION.—If a conductor in repelling an assault upon him by a passenger uses more force than appeared to him, as a reasonable man, to be necessary, the railroad company will be liable for damages. (Page 620.)

Appeal from Miller Circuit Court.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

Appellee filed his suit in the circuit court of Miller county, alleging that on June 4, 1894, while a passenger on the road

of appellant en route between Lewisville and Texarkana, the conductor of the train, Randall Silverman, cursed and abused him willfully, and did beat, bruise and ill treat him, striking him with a lantern, by reason of which curses, blows and ill treatment he was damaged in the sum of $20,000.

Appellant answered, denying that appellee was a passenger, and alleging that the wounds received by appellee at the hands of Randall Silverman were received in a personal encounter between himself and Silverman, for which appellee alone was responsible; that the altercation was brought about by appellee striking the conductor in the face; that appellee's attack on the conductor was not occasioned by a desire to protect himself, but originated in anger towards the conductor because of the attempt of the said conductor to prevent him from making improper advances toward a young lady passenger on said train; that the conductor, in defending himself, and in striking appellee, acted not as the agent of appellant, but in his own individual capacity, for which appellant is in no wise responsible.

Upon trial verdict was for appellee in the sum of $700, for which judgment was rendered.

At the instance of appellee, the court gave the following instructions:

"No. 1. If the jury find, from a preponderance of the evidence in this case, that, as alleged in the complaint, plaintiff was, on the 4th day of June, 1894, a passenger in a coach of defendant, being transported from Lewisville, Ark., to Texarkana, Ark., and that, while being so transported as a passenger by the defendant, without lawful cause he was beaten and wounded by the conductor of the defendant in charge of said train, and said plaintiff was thereby injured or damaged in any amount, then is plaintiff entitled to recover.

"No. 2. The fact that the plaintiff may have first struck said conductor would not excuse or justify said conductor in using against plaintiff any more force than sufficient to protect said conductor from said blow, or a repetition thereof, or from any further violence at the hands of plaintiff.

"No. 3. Though the jury should believe from the evidence that plaintiff made the first assault upon the conductor

on defendant's train, still, if they further believe from the evidence that the conductor so attacked repelled plaintiff's assault with more force and violence, and did more injury to plaintiff, than was reasonably necessary for his own protection from injury at the hands of plaintiff, then, as a matter of law, the conductor using such excessive force would be guilty of assault and battery; and if in this case defendant seeks to justify the assault and battery committed by the conductor upon the plaintiff (if you find such an assault and battery was made, from the evidence), on the ground that plaintiff first assaulted the conductor, it is incumbent on the defendant to show that no more force was used than the exigencies of the case called for. The force used must be suitable in kind and reasonable in degree, otherwise the justification fails. An assault by a passenger upon a conductor of a train will not justify the conductor in pursuing and punishing the passenger after the assault is over; if he does so, he makes the defendant liable for the injury.

"No. 4. If the jury believe from the evidence that the plaintiff was guilty of indecorous conduct toward the lady passenger, then it was the duty of the conductor of the train to use all necessary and reasonable means to protect her from insults or annoyance; but he would have no right to abuse or insult the plaintiff as a punishment for such conduct, the conductor's duty being only to prevent a continuation of such conduct by the use of all necessary and reasonable means.

"No. 6. The jury are instructed that the facts, if proved, that the plaintiff may have spoken the first word or made the first remark to the conductor on the defendant's train, and this word or remark so spoken by plaintiff brought on the difficulty, and caused the assault and battery which ensued, and the plaintiff struck the first blow, would not of itself excuse or justify said conductor in using against the plaintiff any more force than was reasonably necessary to protect him (said conductor) from said blow, or a repetition thereof, or from any further violence at the hands of plaintiff."

To the giving of each of which the appellant separately excepted.

The appellant asked the court to give the following instructions, which the court refused:

"No. 2.   The jury are instructed that while the defendant is responsible for the acts of its conductors in their treatment of passengers, done in the line of their duty in the scope of their authority, yet the conductor has the right to resent and resist an assault made on him by a passenger, or any one else, and his act in resisting or resenting such an assault is a personal act of the conductor, for which the principal (the defendant in this case) is not responsible.

"No. 3.   If the jury find from the evidence that the assault of the defendant's conductor on the plaintiff was not malicious, and was not the result of a reckless disregard of plaintiff's rights as a passenger, but was occasioned by the assault of plaintiff on the conductor, and was made to repel and resent such assault, then the plaintiff is not entitled to recover any damages for the pain, suffering or humiliation experienced by him, and your verdict should be for the defendant.

"No. 5.   If the jury find from the testimony that the conductor in charge of the train on which plaintiff was a passenger did strike plaintiff and injure him as claimed by plaintiff, and that in so doing he used more force than was necessary in order to repel any assault which may have been made on him by the plaintiff, or that he used more force than was necessary in order to prevent any improper interference with another passenger on the train by the plaintiff, and you also find that the unnecessary force and violence on the part of the conductor was done under excitement and in anger, occasioned by the assault of plaintiff, or by improper conduct of plaintiff towards another passenger, then plaintiff cannot recover as against defendant, and your verdict will be for defendant.

"No. 6.   If the jury find from the testimony that the plaintiff was a passenger on the defendant's railroad at the time and place claimed by him, and that he was beaten and bruised by the conductor of said train with a lantern, and that from the said beating and bruising the plaintiff has suffered physical pain, and may probably continue to suffer therefrom, and also experienced humiliation by reason thereof, and that said beating

and bruising was caused by the act of plaintiff in slapping the said conductor's face, by which the said conductor was angered and excited, and while so angered and excited gave the blows with the lantern, then your verdict should be for the defendant, although you should find from the testimony that the conductor used more force than was necessary to repel the assault made on him by the plaintiff."

Of which the court amended instruction No. 3 by adding at the end thereof the words, "unless you find that he used more force than was necessary to protect himself."

The court gave No. 3, as amended, and refused Nos. 2, 5 and 6.

To the amending said instruction No. 3 as aforesaid, and giving the same as amended, and to the refusal of the court to give each of said instructions, Nos. 2, 5 and 6, appellant separately excepted.

*Sam H. West* and *Gaughan & Sifford*, for appellants.

The conductor, being the assaulted party, had a right to use whatever degree of force seemed necessary to him, as a reasonable man, at the time and under the circumstances of the case, to repel such assault. 59 Ark. 137. The master is not liable under circumstances which justify, in law, the acts of the servant; and the court should have given the instruction asked by appellant. 51 Ark. 88. Even if the servant was not so justified in law, the master is not liable because the appellee was the aggressor. 42 Fed. 787; 81 Ga. 485; 62 Ark. 235; 62 Ark 245. The court erred in permitting improper arguments to the jury by counsel for appellees. 58 Ark. 353; 48 Ark. 106; 58 Ark. 353; 58 Ark. 473; 61 Ark. 130; 37 S. W. 877.

*Scott & Jones*, for appellee.

No exceptions were saved at the time to the court's order overruling the motion for new trial, hence this appeal is not regular. 5 Ark. 708. One who defends a charge of assault and battery on the ground of self-defense must show that he used only such force as was necessary to repel the attack. Webb's Pollock, Torts, 255. Appellant is liable for excessive force of its servant, and the fact that the injured party was at fault does not excuse them. 6 H. & N. Ex. 359; 7 H. & N.

Ex. 356; 15 S. E. 778; 62 Me. 84; 103 Ill. 546; 11 S. W. 139. The argument used by counsel was not improper, and the court acted within its sound discretion in allowing it. 90 Mo. 548; 63 Fed. 793; 66 Fed. 519; 58 Ark. 381.

*Sam H. West* and *John T. Sifford*, for appellant in reply.

This appeal is properly taken. 43 Ark. 391. The proof cured the defect of allegation as to the appearance of necessity to the conductor at the time, and the court should have instructed on the point. 44 Ark. 527; 54 Ark. 289; 59 Ark. 215.

HUGHES, J., (after stating the facts.) Briefly, the case may be stated as follows:

Appellee was a passenger on train of appellant. He was a New York jewelry drummer, and took a seat near a girl of 17 years, a stranger to him. The conductor removed this girl to the rear of the coach. Appellee said to a friend, he would go back, and see why the conductor moved this girl. He went back, sat down by the girl, and began inquiring where she was going, and asked her other questions. The conductor looked at him in a manner that convinced him that the conductor, to say the least, was suspicious of his intentions. From this an altercation ensued, in which appellee struck the conductor first, and in turn the conductor struck him, and beat him with a lantern.

There was evidence tending to show that the conductor gave the appellee a serious and severe beating with his lantern, and that the appellee was endeavoring to ward off the blows or protect himself by throwing up his hands; that the brakeman, while this was going on, stood behind the conductor, and twice, when the conductor ceased beating the plaintiff, told him to give him some more, and that thereupon the conductor hit him two more licks. To use his language, "I think he gave him some more twice." The evidence tended to show that the conductor only stopped beating the appellee because he discovered he was a mason; that "the conductor struck several blows—as many as three to five each time—then he would talk to the plaintiff, and strike him again. The blows were upon the head and shoulders of the plaintiff, who tried to ward them off with

his hands. Plaintiff's hat was knocked off, there was a scalp wound, and the blood ran over his face, hands and clothing.

Dr. Webster, who dressed the plaintiff's wounds, testified: "The wounds were on his head, left shoulder and arms; two or three wounds on the head; his shoulder was pretty badly bruised and finger pretty badly cut. One of the wounds on his head was about two and a half inches long, cut to the skull. The other one was cut to the skull, but was more of a puncture, it was probably one-half inch long. The wound on his finger was quite a gash." On cross examination, he said: "I did not regard his wounds of a serious nature." There was other testimony tending to show that the beating was severe; in fact very unnecessary to repel the force used by the appellee in slapping the conductor in the face, which, there is proof tending to show, was provoked by the conductor calling the appellee "a son of a bitch."

The appellant contends that, by the instructions of the court, it was left to the jury to decide whether or not the conductor used more force in repelling the assault of appellee than was necessary to protect himself, and that this was error; that the court should have instructed, as appellee asked, that if they found that the conductor used more force than appeared to him necessary, acting as a reasonable man, under the circumstances and surroundings, etc. Conceding that, as an abstract proposition, the contention is well founded, yet the refusal to so instruct in this case could not be prejudicial, as it is plain, from the testimony, that the conductor did use more force than was reasonably necessary to repel the assault of the appellee. If error, therefore, it is not prejudicial.

The appellant contends that if the servant is justifiable, under the law, in what he did, the master is not liable. Very true. "When one is wrongfully assaulted, it is lawful to repel force by force (as also to use force in defence of those whom one is bound to protect, or for keeping the peace), provided that no unnecessary violence is used. * * * We must be content to say that the resistance must not exceed the bounds of mere defense and prevention, or that the force used in defence must not be more than commensurate with that which provoked it." Webb's Pollock on Torts, p. 255.

We think the burden was on the appellant to show that the conductor used no more force than appeared to him, as a reasonable man, necessary to repel the assault of the appellee. This has not been done. On the contrary, it appears from the evidence of the appellant, as well as that of the appellee, that the amount of force used by the conductor greatly exceeded that which would appear to any reasonable man to have been necessary to repel the assault made by the appellee upon the conductor, by slapping him in the face with his hand.

The appellant also contends that "if the conductor did use more force than seemed to him necessary for his own protection, the appellant, the master, is not liable in damages." To support this contention, they cite *Peary* v. *Ga. R. & B Co.* 81 Ga. 485 (in which no authority is cited to sustain the opinion), and *Harrison* v. *Fink*, 42 Fed. 787, a case originating in Georgia, to support which *Peary* v. *Ga. R. & B. Co.* is cited.

We cannot yield assent to such a doctrine, which is based upon the ground that the injured party is the aggressor, brings on the difficulty. This would exempt a railroad company from liability in a case where, for a simple assault upon a servant, representing the company, the servant might severely and cruelly beat the assailant, a passenger, whom the law makes it his duty not to abuse or mistreat unnecessarily. The rule applicable to such cases is this, that when a *prima facie* case of assault and battery is sought to be justified, it is incumbent upon one who justifies to show that no more force was used than the exigencies of the case called for. The force used must be suitable in kind and degree to the exigencies of the occasion, otherwise the justification fails. *Hammon* v. *Ry.*, 62 Me. 84; *Dillingham* v. *Anthony* (Tex.), 11 S. W. 139.

There are objections based on language used in argument by appellee's counsel, which was perhaps not altogether proper, but we think the case ought not to be reversed on account of it. We do not think it probable that the jury was misled or prejudiced by it. We cannot say that there was an abuse of discretion by the trial court.

The verdict was for $700, actual damages, which we do not think excessive. Upon the whole case, finding no reversible error, the judgment is affirmed.

BUNN, C. J. (dissenting)    The statement of the facts in this case, as detailed by the young lady involved, presents the plaintiff in a very different attitude from that in which his own testimony presents him; and the conductor's testimony puts quite a different phase on his use of unnecessary force to repel the assault from that made to appear in plaintiff's testimony. But since no testimony, antecedent to the assault on the conductor by the plaintiff, ought to have any influence upon our decision on the question raised by the instructions called in question; and since, in discussing those instructions, it must be conceded, for the sake of the argument at least, that there was unnecessary force employed by the conductor in repelling the assault upon himself by the passenger, I forbear to make any particular statement of the facts.

The question at issue arises upon instructions given and instructions refused and instructions modified; and, briefly stated, is this: " *Where a passenger assaults the conductor of the train in which he is traveling, and the latter, in resenting, uses more force than is necessary to repel the assault, is the company liable for damages occasioned by the employment of the excessive force?*"

The authorities cited by a majority of the court in support of their view of the question involved are: Webb's Pollock on Torts, p. 255–6; *Hanson* v. *E. & N. A. R. Co.*, 62 Me. 84, and *Dillingham* v. *Anthony*, 11 S. W. Rep. (Tex.) 139; and these I will indeavor to analyze and discuss in the order named.

In the first—a text book—under the heading of "Self defense" it is stated: "When one is wrongfully assaulted, it is lawful to repel force by force (as also to use force in the defense of those whom one is bound to protect, or for keeping the peace), provided that no unnecessary violence be used. How much force and what kind it is reasonable and proper to use in the circumstances must always be a question of fact, and, as it is incapable of being concluded beforehand by authority, so we do not find any decisions which attempt a definition. We must be content to say that the resistance must 'not exceed the the bounds of mere defense and prevention,' or that the force used in defense must be not more than 'commensurate' with that

which provoked it. It is obvious, however, that the matter is of much graver importance in criminal than in civil law."

It is generally held that the rule on the subject is not exactly the same in civil as in criminal actions, and the statement of the author is but the statement of the rule in criminal actions. Moreover, the rule, as stated, only reaches the direct and immediate actor, and has nothing to say as to the duty or liability of a third party holding, for instance, the relation of master or employer to the prime actor. The authority, therefore, is not applicable to the case in issue; and it states nothing that is inconsistent with what I have to say, or with the authorities I shall take occasion to cite.

*Hanson* v. *E. & N. A. R. Co. supra*, was a case where a brakeman was attempting to put off the coach a dog belonging to the plaintiff, a passenger, it being against the rules to carry dogs on the coach. The brakeman attempted in rather a rude and unceremonious manner to put the dog off, and this gave rise to a difficulty between the plaintiff and the brakeman, in which the former rather rudely pushed the latter down into a seat, and the latter, stretching out his legs, kicked the plaintiff, breaking the pane of glass behind him in doing so, but failed to release himself by so doing from the grasp of the former. When the plaintiff had finally released the brakeman, under promise that the latter should behave himself, and while the plaintiff's back was turned, the brakeman struck him severe blows with a poker about the head and shoulders and over the eye, which constituted the assault and battery for which the suit was brought. In that case, the court said: "If, therefore, it be true, as defendants contend, that the plaintiff was the aggressor, that he first assaulted the brakeman, and resisted him in the performance of a legitimate duty, it was still a question of fact for the jury to determine, whether the brakeman did not use greater violence than the exigencies of the case demanded; whether he did not pursue the plaintiff, and inflict the blows upon his head with the iron poker, after the latter had ceased his assault, had ceased his resistance, and was returning to his seat with his back to the brakeman." In that case the servant was within the line of his employment and duty in attempting to put the dog off the coach. In doing so he became in-

volved in difficulty with the plaintiff—the owner of the dog—
which at first extended no further than the act of plaintiff in
pushing or pulling the brakeman down into his seat, and the
latter's kicking the former by stretching out his legs or in the
act of so doing, for the record is not clear on that point. The
scuffle seems to have ended at this point, on the plaintiff's promise
to the brakeman that he would let him up if he would afterwards
behave himself, which agreement the brakeman assented to,
and was released; but as soon as he could slyly do so, he
seized the iron poker, and badly beat the plaintiff. The first
difficulty having closed, the brakeman became the aggressor
and assaulting party in the latter. Whatever name the court
may employ to designate this character of assault on the part
of the servant, it was not in self-defense, and therefore it was
done while in the line of his employment, and done in violation
of his and his master's duty to the passenger. And such was
the theory upon which the court decided the case. We have
no quarrel with the decision on the facts of the case, however
wanting in precision its language may be.

In *Dillingham* v. *Anthony*, 11 S. W. Rep. (Tex.) 139, the
much mooted question was, whether or not the malicious and
wilful assault of a conductor upon one of his passengers, in a
personal controversy between the two disconnected from any
duty of the conductor as such, rendered the railway company
liable. The court held the company liable upon the facts of
that case, but not for exemplary damages. It was manifest that
the court took the side of the long standing controversy to the
effect that the *malice* and *wilfulness* of the servant in making an
assault upon the passenger did not excuse the master from lia-
bility, since the latter owed a duty to the passenger—that of
protection—which, through his servant, he had violated. I have
no desire to enter upon that threadbare discussion, since the
question is not presented in this record.

In *Harrison* v. *Fink*, 42 Fed. Rep. 787, the doctrines of
which the court repudiates, as well as *Peary* v. *Ga. R. & B.
Co.*, 81 Ga. 485, upon which it is founded, the court said, quot-
ing from *Peary* v. *Ga. R. & B. Co.:* " 'Did he (the plaintiff) have
a cause of action for the shooting? But for his fault, the
conductor would not have been brought into a state of excite-

ment, from danger and insult, which unfitted him for discharging his proper duties, either to the company or the passenger. Whether the conductor was more or less in fault than the plaintiff was in shooting, certainly the plaintiff was more in fault than the company, because the plaintiff was there upon the ground, stirring up excitement and bringing on danger both to the conductor and himself. He unfitted the conductor for exercising the care and prudence that were essential to guarding the interests of the company, and essential to performing in a proper manner his duty to the company or to the plaintiff. The plaintiff spoiled the instrument, and then sued the manager because the performer did not make good music. It was the plaintiff's fault that the conductor was out of tune, and though the conductor might not be altogether excusable for the shooting (according to his own evidence, however, he was excusable), the company was not in fault for it; and it would be unjust for the plaintiff to recover of the company, when he boarded its train, violating the law, as we can well infer, by carrying upon his person a concealed weapon; violating the law again by swearing and using obscene language; violating the law again by committing an assault upon the conductor with a pistol, drawing the pistol, and presenting it at him; and violating the law by general disorder and misconduct throughout the transaction, up to the moment he was shot.'" And, continuing, the federal court said: "This quotation expresses very clearly, in our opinion, the correct rule on the subject."

Why the doctrine asserted in those cases failed to receive the sanction of the majority we do not see, for it is a doctrine now generally held, I believe, that a passenger, who so acts as to disqualify a servant from properly performing his duty to his master and to the public by assaulting him and causing him to resort to whatever present means of self-defense he may have, ought not to be heard to complain of the consequences. This is the doctrine held in *City Electric R. Co.* v. *Shropshire*, 28 S. E. 508, in which Judge Lumpkin, speaking for the supreme court of Georgia, said: "One who voluntarily, and by his own misconduct, places it beyond the power of a master to protect him (that is by disqualifying his servant) surely cannot complain of an omission so to do." The same principle is announced in

*Scott* v. *E. P. N. & E. R. Ry. Co.*, 53 Hun, 414.   This last case is authority for saying that, while in criminal law words do not justify an assault, so far as the party making an assault is concerned, there is no reason for holding that the carrier should be held responsible when a passenger, by his own improper and insulting behavior, while a passenger on the road of the railroad company, brought upon himself an assault.

I come now to consider what will be regarded as conduct not within the line of his employment on the part of a servant. Some of the cases already cited throw light on this question, but it may be well to consider others.   In *Little Miami Ry. Co.* v. *Witmore*, 19 Ohio (N. S.) 133, the supreme court of Ohio said:   "The evidence of the company on the trial tended strongly to prove that the plaintiff, by his importunate conduct and abusive language towards the servant, provoked a personal quarrel between them; that the assault was the result of this quarrel, and that the blow was inflicted by the servant as an act of personal resentment.   If these facts had been found by the jury, the wrongful act of the servant in striking the plaintiff could not be regarded as authorized by the master, nor as an act done by the servant in the execution of the service for which he was engaged by the master.   The fact that the blow was inflicted with a hatchet furnished by the master to be used for a wholly different purpose, though in connection with the servant's business, was wholly immaterial as respects the liability of the master.   If he would not otherwise have been liable for the assault, the fact that it was committed with his hatchet did not contribute to make him so."

In *N. O. & N. E. R. Co.* v. *Jopes*, 142 U. S. 25, the supreme court of the United States, after discussing the rule which governs in cases where a conductor removes a passenger from the coach for misconduct, goes on to say:   "But, if an employee may use force to protect other passengers, so he may use force to protect himself.   He has not forfeited his right of self defense by assuming service with a common carrier; nor does the common carrier engage aught against the exercise of that right by his employee.   There is no misconduct when a conductor uses force, and does injury in simply self defense; and the rules which determine what is self defense are of universal

application, and are not affected by the character of the employ-ment in which the party is engaged.    Indeed, while the courts hold that the liability of a common carrier to his passengers for assaults of his employees is of a most stringent character, far greater than that of ordinary employers for the action of their employees, yet they all limit the liability to cases in which the assault and injury are wrongful.''

The idea is that where the servant leaves the line of his employment to attend to his own affair,—defend himself against the assault of a passenger,—he is nevertheless doing a lawful act, and neither he nor his master are liable.

In *Little Miami Ry. Co.* v. *Witmore, supra,* in speaking of the master's responsibility for the acts of the servant, the court said:  ''But, to make the master responsible, the act of the servant must be done in the course of his employment, that is, under the expressed or implied authority of the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master.''    It is impossible to get the full force of this decision by mere quo-tations and making extracts therefrom.    Nor is it possible to do so in any case.    I can only invite the reader to an examination of the cases I have cited and merely made quotations and extracts from, and I feel confident that, without a jar or discordant note anywhere, they all amply sustain the doctrine that lawful self defense on the part of a conductor entails no liability upon him, and of course none upon the company; that such defense, as its definition implies, is a matter personal to himself, and is some-thing he neither engages to make or not to make in whatever employment he may enter, and that it is therefore not within any employment he may make, being a natural right, which he can neither surrender nor qualify by any contractual act; and that in making a self defense he is not directed or influenced in the same by any lawful engagement whatever with another.

If the servant by lawful assault in response to an assault upon his own person is not within the line of employment to any master, can it be said that continuing his defense to the extent of using more and greater force than is necessary to re-

pel the assault and force his antagonist to desist will have the effect of bringing him back into the line of his employment? The absurdity of such a proposition renders a discussion of it more or less insulting to even the most generous and patient reader.

All the cases in which the master has been held liable for the use of excessive force by the servant are cases where the servant was acting in the line of his duty to and employment by the master, and most frequently illustrating the conduct of conductors and other servants in putting off the train passengers and others who refuse to pay fare, or are guilty of misconduct such as renders them liable to be put off, for the ejecting of disorderly persons is one of the express duties of the conductor, not only to the railroad company, but to the public and to the law of the land.

WOOD, J., concurs in the dissenting opinion.