RUTHERFORD et al. v. FOSTER et al.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1903.)

No. 1,892.

1. WRONGFUL DEATH—LORD CAMPBELL'S ACT—BURDEN TO SHOW ACT CAUSING DEATH WRONGFUL.

In an action for damages resulting from a death caused by the wrongful act of another, under Lord Campbell's act, the burden is on the plaintiff in the first instance to show that the act which caused the death was wrongful.

2. SAME—EVIDENCE.

But the wrongfulness of the act is not determinable by the opinions of the parties to the action, but by the law applicable to the act and to the facts and circumstances which conditioned its performance. Some acts are wrongful in themselves. The wrongfulness of others results from the circumstances under which they were committed.

3. SAME—PLEADING.

A denial in a pleading that an act was unlawfully and wrongfully done is futile. Such a denial admits that the act was done, and presents no issue of fact.

4. SAME—PRESUMPTIONS.

A legal presumption arises, from an assault and battery of a man by another with a deadly weapon, that the act was wrongful; and when such an act is admitted or proved the burden is on the defendant to show by a fair preponderance of evidence facts and circumstances in justification or mitigation of it.

5. SAME.

A legal presumption arises, from the killing of one human being by another, that the act was wrongful; and when the killing is admitted or proved the burden is on the defendant to establish by a fair preponderance of evidence facts and circumstances in justification or mitigation of it.

**6. SAME—EVIDENCE.**

At the close of the evidence produced by the plaintiffs in an action under Lord Campbell's act the pleadings admitted and the testimony proved that the deceased was killed by blows upon his head, inflicted by one of the defendants with an axe. The defendants then introduced evidence that these blows were struck to prevent the deceased, who had first assaulted one of the defendants, from killing him or inflicting serious bodily injury upon him. *Held*, the court rightly instructed the jury that the presumption of law from the admitted killing was that the act was wrongful, and that the burden was upon the defendants to establish by a fair preponderance of testimony facts and circumstances constituting a justification of the act.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Dan W. Jones (James W. Butler and Ernest Neill, on the brief), for plaintiffs in error.

W. S. Wright and S. D. Campbell (W. A. Oldfield, Charles F. Cole, and Jos. W. Phillips, on the brief), for defendants in error.

Before SANBORN and VANDEVANTER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. This is an action by the widow and minor children of James Anderson Foster against George Rutherford and Neill Rutherford to recover damages from them because they assaulted, battered, and killed Foster with an axe near his home in the state of Arkansas in February, 1901. The action is based on Lord Campbell's act (St. 9 & 10 Vict. c. 93) which was enacted in the state of Arkansas in 1883. The portion of it material to the controversy in this case reads:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages notwithstanding the death of the party injured and although the death shall have been caused under such circumstances as amount in law to a felony." Mansf. Dig. § 5225.

There was a verdict and judgment for the plaintiffs, and the chief complaint of the trial is that the court instructed the jury that there was a presumption of law that the killing of one man by another with a deadly weapon was wrongful, and that when the killing was admitted the burden of proof rested on those who committed it to establish the facts which they had alleged in justification or mitigation of their act. The portion of the charge assailed was in these words:

"The killing by the defendant Neill Rutherford having been shown, and in fact admitted, by the answer, the presumption of law is that it was wrongful, and the burden is upon the defendants to show by a fair preponderance of the evidence that the assault upon Foster by the defendant in the manner in which it was made appeared to him at the time so urgent and pressing that, in order to prevent his father being killed or receiving great bodily injury, it was necessary to act as he did, and that Foster was the assailant, and that the defendant Neill Rutherford's father had really in good faith endeavored to decline any further contest with the deceased."

A large portion of the briefs of counsel for the defendants is devoted to an argument and to quotations from opinions of courts to establish the proposition that under Lord Campbell's act the plaintiffs cannot recover, unless the act of the defendants which causes the death is wrongful, and that the burden is upon the plaintiffs in the first instance to plead and prove the wrongful character of the act. Their proposition is sound, and presents no question for discussion. But, where the act is proved, its rightfulness or wrongfulness is to be tested by the facts which are established and by the law, and not by the averments or the testimony of the parties to the controversy to the effect that it was either rightful or wrongful. The question whether an act is right or wrong is a question of law, and not of fact. Hence no issue of fact can be raised by an averment in a pleading, on the one hand, that the act is right, or, on the other, that it is wrong. Nor is the testimony of witnesses that a given act is either lawful or unlawful ordinarily admissible to determine that question. An allegation that an act was unlawfully or wrongfully committed adds nothing to the averment that the act was done. A denial that an act was wrongfully or unlawfully done raises no issue of fact. It admits that the act was done, and expresses the opinion of the pleader that he had a right to do it. Allegations and denials in pleadings that acts averred were rightful or wrong present no issue of fact, have no function, and produce no legal effect. They are the expressions of the opinions of the parties with respect to their legal rights, and their opinions are immaterial and futile in the pleadings or upon the trial of the action. Tyner v. Hays, 37 Ark. 599, 603; Shirk v. Williamson, 50 Ark. 562, 9 S. W. 307; Lambert v. Robinson, 162 Mass. 34, 36, 37 N. E. 753, 44 Am. St. Rep. 326; Bliss on Code Pleading, §§ 327, 332, note 62.

The act which was the foundation of this action was the assault and battery of James Anderson Foster by the defendants. Let us recall here the rule that there can be no recovery for this death unless, under Lord Campbell's act, the plaintiffs established the fact that the act of the defendants which caused the death was wrongful, so that the party injured could have maintained an action if he had survived. But surely no evidence is requisite to establish the wrongful character of an assault and battery with a deadly weapon which produces death. While a defendant is presumed to be innocent until he is proved to be guilty, he is proved to be guilty when it is either admitted or proved that he assaulted and battered the deceased with an axe so that he died. The law never presumes that any man has the right to put his neighbor to death with a deadly weapon. Presumptions of law are derived from the ordinary experience of mankind and from the customary course of human events. They are the statements of general rules deduced from observation and experience. Experience and observation have taught that assaults and batteries with deadly weapons which cause death are generally violations of the moral and of the statute law, and hence the legal presumption has arisen that they are wrongful, and the burden of pleading and proving facts which show that one of them falls within an exception to the general rule—that for some extraordinary reason it is justifiable or excusable, and is not governed by the legal presumption—is rightfully cast upon him who

asserts that his assault was rightful. Ward v. Blackwood, 48 Ark.
396, 405, 3 S. W. 624, 627; St. Louis S. W. Ry. Co. v. Berger, 64
Ark. 613, 620, 44 S. W. 809, 39 L. R. A. 784; Conway v. Reed, 66 Mo.
346, 353, 355, 27 Am. Rep. 354; Castle v. Duryea, *41 N. Y. 169.
In Ward v. Blackwood, the Supreme Court of Arkansas said, "De-
fendant admitted the assault and battery, and thereby necessarily con-
ceded the plaintiff's right to recover." In Conway v. Reed, 66 Mo.
346, 354, the Supreme Court of that state declared that: "Even in a
trial for murder, from a proof of the killing with a deadly weapon the
law implies an intent to kill, and then it is for the defendant to meet
this presumption with evidence showing that it was unintentional or
justifiable or excusable. 'From the simple act of killing the law will
presume that it was murder in the second degree.' State v. Holme,
54 Mo. 153." This quotation brings us to another proposition that
is important, if not decisive of the issue presented in this case. Coun-
sel for the defendants earnestly insist that the same presumptions
arise and the same rules govern the trial of this case that would gov-
ern the trial of a criminal charge against the defendants for the killing
of Foster, except that the plaintiffs are not required to prove their
case beyond a reasonable doubt. Their position here is well taken,
and the soundness of their proposition is conceded. What, then, is
the presumption that arises in criminal cases from the simple proof
or admission that the defendant killed the deceased with a deadly
weapon? The most learned, exhaustive, and decisive treatment of
this question which has come under our observation may be found in
the opinion of Chief Justice Shaw in Commonwealth v. York, 9 Metc.
(Mass.) 93, 111, 113, 119, 121, 43 Am. Dec. 373. By considerations of
public policy, by reason, by logic, by the citation of many authorities,
by quotations from many authors, he proves that the law both in
England and America had always been, and was when he wrote that
opinion, that the presumption of murder arises from proof of volun-
tary homicide, and that when the killing is admitted or proved the bur-
den of proof is thenceforth upon the defendant to excuse or to justify
his act. Among the various quotations from authorities which he
makes to establish this proposition, are these: Foster in his Crown
Law, at page 255, said: "In every charge of murder, the fact of
killing being first proved, all the circumstances of accident, necessity,
or infirmity are to be satisfactorily proved by the prisoner, unless they
arise out of the evidence produced against him; for the law pre-
sumeth the fact to have been founded in malice until the contrary
appeareth. And very right it is that the law should so presume.
The defendant, in this instance, standeth upon just the same ground
that every other defendant doth. The matters tending to justify,
excuse, or alleviate must appear in evidence before he can avail him-
self of them." At page 290 he added: "I have already premised
that whoever would shelter himself under the plea of provocation
must prove his case to the satisfaction of his jury. The presump-
tion of law is against him till that presumption is repelled by contrary
evidence." And again, at page 313: "For all voluntary felonious
homicide without a provocation is undoubtedly murder." In Legg's
Case, Kelyng, 27, one John Legg was indicted for the murder of

Robert Wise, and "it was upon the evidence agreed that if one kill another, and no sudden quarrel appeareth, this is murder, as in Mackalley's Case, 9 Co. 67b. And it lieth on the party indicted to prove the sudden quarrel." In 1 Hawk. c. 31, § 32, it is laid down that "wherever it appears that a man killed another, it shall be intended, prima facie, that he did it maliciously, unless he can make out the contrary, by showing that he did it on a sudden provocation," etc. In 4 Bl. Com. 201, it is written: "We may take it for a general rule that all homicide is malicious, and, of course, amounts to murder, unless where justified, excused, or alleviated into manslaughter; and all these circumstances of justification, excuse, or alleviation it is incumbent upon the prisoner to make out to the satisfaction of the court and jury." In 1 East, P. C. 224, 340, it is said that, "the fact of killing being first proved, the law presumes it to have been founded in malice, unless the contrary appear; and all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him." In The Queen v. Kirkham, 8 Car. & P. 116, 117, Coleridge, J., says: "As soon as it is ascertained that one individual, in the possession of his reason, has willfully taken away the life of another, the law's first presumption is that the party is guilty of murder." "The law requires from him and will allow him to show that there were some mitigating circumstances which alter the presumed character of the act." Chief Justice Shaw cited many other authorities which demonstrate the fact that the law of England, Massachusetts, New York, and New Jersey was in 1845, when that opinion was written, that "when the fact of voluntary homicide is shown, and this not accompanied with any fact of excuse or extenuation, malice is inferred from the act; that this is a fact which may be controlled by proof, but the proof of it lies on the defendant; and, if not so proved, it cannot be taken into judicial consideration." Commonwealth v. York, 9 Metc. (Mass.) 121, 43 Am. Dec. 373. And this is the general rule in the United States to this day. Allen v. U. S., 164 U. S. 492, 494, 500, 17 Sup. Ct. 154, 41 L. Ed. 528; Silvus v. State, 22 Ohio St. 90, 99–101; Brown v. State, 83 Ala. 33, 35, 3 South. 857; State v. Holme, 54 Mo. 153, 161; State v. Underwood, 57 Mo. 49. The conclusion is irresistible that in criminal prosecutions the simple killing of one man by another with a deadly weapon raises the legal presumption that the killing was wrongful; and the same presumption ought to prevail, and, as counsel for the defendants themselves insist, does prevail, in a civil action involving the same act as in the criminal action. The presumption ought to prevail in the civil action because it is right and reasonable, and because the law has a more tender regard for life and liberty than for property. Conway v. Reed, 66 Mo. 346, 354, 27 Am. Rep. 354; Tucker v. State, 89 Md. 471, 479, 43 Atl. 778, 44 Atl. 1004, 46 L. R. A. 181; Brooks v. Haslam, 65 Cal. 421, 4 Pac. 399; Darling v. Williams, 35 Ohio St. 58, 63.

In opposition to this conclusion counsel for the defendants below cite the case of Nichols v. Winfrey, 79 Mo. 544, and make an argument by analogy to the effect that since, in cases for damages for death caused by neglect, the acts themselves do not establish the negligence,

but the burden is on the plaintiffs to prove it aliunde, so it must be in actions for damages caused by wrongful acts. The argument by analogy, however, fails for this reason: Some acts—for example, the killing or injury of passengers by the operation of railroad trains—are acts of negligence per se, and a legal presumption that the actors were negligent arises from the acts alone, and casts the burden of showing that they were not the result of negligence upon those who committed them; while there are other acts that raise no such presumption, but call upon the plaintiffs for evidence of facts and circumstances surrounding them to establish the fact that they were the result of negligence. In the same way there are acts that are wrongful in themselves, and from which a legal presumption of unlawfulness arises, which throws the burden of proof upon those who commit them, while there are other acts which raise no such presumption, and which leave the burden upon the plaintiffs to prove facts and circumstances which show their wrongfulness. An assault and battery with a deadly weapon which produces the death of the victim is of the former class, of the same class as an injury to a passenger while riding upon a train, and from it the presumption of wrong arises which casts the burden of establishing a justification or an excuse for it upon the perpetrator. Nor is the decision of the Supreme Court of Missouri in Nichols v. Winfrey more persuasive. It is said in the opinion in that case that a general denial of an allegation of a petition that a defendant, "with force and arms, violently, maliciously, unlawfully, and wrongfully, without any just cause, did shoot the said James Steinbeck," without more, sufficiently pleads a justification of the killing to admit evidence that the act was done in defense of the perpetrator and of his home, in which the deceased was assaulting him, and that the shooting and killing of a man raises no legal presumption of wrong. 79 Mo. 549, 550. In other words, the effect of this opinion is that the legal presumption in the state of Missouri is that the shooting and killing of a human being is right and lawful, and the burden is on his victim or his next of kin to prove that it was wrong to kill him. If the rule of pleading announced in this opinion prevails in the state of Missouri, that fact is not material in the action at bar, because this action is governed by the rule which prevails in the state of Arkansas, to the effect that such a denial presents no issue of fact. Tyner v. Hays, 37 Ark. 599, 603; Shirk v. Williamson, 50 Ark. 562, 9 S. W. 307. The extraordinary rule of law that there is no legal presumption that the voluntary killing of a human being with a deadly weapon is wrongful is deduced in the opinion from the illogical rule of practice to which attention has been called, and, as the premise from which the conclusion was drawn does not exist in this case, the conclusion does not follow. Moreover, there are many decisions of the Supreme Court of Missouri which are not in accord with the view of law expressed in Nichols v. Winfrey, and which plainly and repeatedly declare that from the simple act of killing the law presumes wrong; nay, even that it presumes murder in the second degree. State v. Gassert, 65 Mo. 352, 354; State v. Holme, 54 Mo. 153; State v. Hudson, 59 Mo. 137; State v. Foster, 61 Mo. 552; State v. Kring, 64 Mo. 594; State v. Lane, Id. 319. It is true that in the later case of State v. McKinzie,

102 Mo. 620, 628, 15 S. W. 149, the Supreme Court of Missouri over-ruled that portion of the decisions which have been cited which declares that the law presumes murder in the second degree from the simple act of killing, but it is not held in this later decision that there is no presumption of law in Missouri that the voluntary killing of a human being with a deadly weapon is wrongful. A careful examination of the various decisions of the Supreme Court of that state convinces that the rule stated in Nichols v. Winfrey is not the law of that state; and, if it was, it is so irrational, so subversive of the fundamental principles of a government which was instituted and is maintained primarily to protect the person and the liberty of the citizen, so obnoxious to a wise and fair administration of justice, and so at war with the established and prevailing rule upon this subject in the other states and in the nation, that both reason and authority would compel us to repudiate it.

From the principles and authorities to which reference has now been briefly made the following deductions material to the question involved in this case may be fairly drawn:

The burden is on the plaintiffs in the first instance, in an action under Lord Campbell's act, to plead and prove that the act which caused the death of the person injured was wrongful, or was an act of negligence.

An answer which denies that a given act was wrongfully or unlawfully done admits its performance, and raises no issue of fact for trial.

The legal presumption is that an assault and battery of an individual with a deadly weapon, which causes his death, is wrongful, and the burden is on the defendant to plead and prove matter in justification or mitigation of the deed.

The legal presumption is that the killing of one man by another is wrongful, and the burden is on the defendant to plead and prove matter in justification or mitigation of the act.

The test of the legality of the instruction of the court which is challenged in this case will be found in the correctness of its application of these rules to the facts developed by the pleadings and the evidence in the case. We turn to the record for these facts: In their complaint the plaintiffs alleged that George Rutherford and Neill Rutherford unlawfully made an assault upon Foster, and willfully, maliciously, wrongfully, wantonly, and negligently killed him "by means of the said Neill Rutherford then and there striking him with an axe," "the said George Rutherford then and there being present, aiding, abetting, encouraging, and advising the said Neill Rutherford to do and commit the acts aforesaid." George Rutherford, in his answer, denied that he, with his son, Neill, "unlawfully made an assault" on Foster, "or did willfully, maliciously, wrongfully, wantonly, and negligently kill the said James Anderson Foster by means of the said Neill Rutherford then and there striking the said Foster with an axe," and denied that he was present aiding, abetting, encouraging, and advising his son, Neill, to do and commit the acts complained of, and to strike and kill Foster. He then averred that Foster wrongfully assaulted him, and placed his life in such imminent peril that it became necessary, in order to save his life or to prevent his receiving great

bodily harm, for his son, Neill, to defend him, and for that purpose Neill struck and killed Foster with an axe. Neill Rutherford made a separate answer, but his denials and his plea of justification are in substantially the same form. The only denial in these pleadings in respect of the assault, battery, or killing is a denial that they were willfully, maliciously, wrongfully, wantonly, and negligently done. But a denial that an act is wrongfully or unlawfully done, as we have seen, admits the doing of the act, and raises no issue of fact. Tyner v. Hays, 37 Ark. 599, 603. Hence the answers admitted that the defendants assaulted and killed Foster by means of the strokes of an axe inflicted by Neill Rutherford, and contained no denial of the act which was the foundation of the action. Stripped of their useless verbiage, the averments and denials of the pleadings, so far as they relate to the killing, were (1) an averment in the complaint that the defendant assaulted and killed Foster by the strokes of an axe inflicted by Neill Rutherford; (2) a confession in the answers that the defendants assaulted and killed Foster with an axe; and (3) an averment in the answers that Foster had first assaulted George Rutherford and put his life in such imminent danger that it was necessary for Neill to kill him to prevent the death or serious bodily injury of his father. Where was the burden of proof under these pleadings? Chief Justice Shaw in Powers v. Russell, 13 Pick. 69, 77, said that where the proof on both sides applies to the same issue or proposition of fact, the party whose case requires the establishment of that fact has all along the burden of proof, although the weight in either scale may at times preponderate. "But where the party having the burden of proof gives competent and prima facie evidence of a fact, and the adverse party, instead of producing proof which would go to negative the same proposition of fact, proposes to show another and distinct proposition, which avoids the effect of it, there the burden of proof shifts and rests upon the party proposing to show the latter fact." The fact which the plaintiffs' case required the establishment of was the assault, battery, and killing. The defendants admitted that fact. Instead of producing proof to negative it, they proposed to show another—a distinct—proposition, which would avoid the effect of it; that is to say, the first assault by Foster. Hence, when the answers had been filed, and the killing admitted, the burden of proof shifted, and rested upon the defendants to establish the dangerous assault which they pleaded in justification of their act.

When the case came on to trial the plaintiffs stood on the admissions of the defendants. They proved simply that Foster died on account of the wounds upon his head, that George Rutherford admitted that he had killed him, and that before his death Foster had provided his family with goods of the value of about $500 a year. Here they rested. No evidence of any justification or excuse for the assault, the battery, or the killing crept into the plaintiffs' case. Thereupon the defendants introduced evidence in support of their defense that Foster had made the first assault, plaintiffs produced rebutting testimony, and the case went to the jury under the instructions of the court. When these instructions were given, therefore, the case stood in this way: The assault, battery, and killing of

Foster by the defendants were admitted; there was a legal presumption that every assault and battery with a deadly weapon which produces death is wrongful, and, when such acts are proved or admitted, the burden is on the perpetrator to prove matter in justification or mitigation by a fair preponderance of the evidence. There was a presumption of law that the killing of one human being by another with a deadly weapon is wrongful, and that the burden is on him who commits the act to prove his justification or excuse by a fair preponderance of evidence. The charge of the court referred to the case before it, and must be read with a due regard to the facts which that case disclosed. It disclosed a case in which an assault, battery, and killing of Foster with a deadly weapon by the defendants had first been admitted, and the defendants had then produced evidence that Foster first assaulted the defendant George Rutherford. The court instructed the jury that the presumption of law was that the killing by the defendant Neill Rutherford was wrongful. The killing to which he referred was the killing with the axe, which had been admitted by the answer and proved by the evidence. The instruction of the court that the law presumed that such a killing was wrongful, and that after it was admitted the burden of proof to establish its justification was upon him who asserted it, was in accord with sound reason and the great weight of authority, and was the statement of a just and salutary rule of law.

The instructions of the court informed the jury that one condition of a justification of the killing was that "Foster was the assailant, and that the defendant Neill Rutherford's father had really in good faith endeavored to decline any further contest with the deceased." This declaration is criticized (a) because it is contended that there was no evidence of a contest between George Rutherford and the deceased, and (b) because it does not contain the rule that, when an assault is so fierce that it is apparently as dangerous for the assailed to retreat as to stand, it is not his duty to retreat, but he may stand his ground, and, if necessary to save his own life or to prevent great bodily injury, may slay his assailant. But there is ample evidence in the record of this case of a contest between George Rutherford and the deceased, and while the rule of law of the omission of which defendants' counsel complain is not found in the paragraph of the charge which they have quoted, and to which they excepted, it was clearly given to the jury in another part of the charge, so that there is no sound reason for any exception to the instructions of the court upon either of these grounds.

There was no error in the trial of this case, and the judgment below is affirmed.